## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DONNA L. SOTO, ADMINISTRATRIX OF | ) | |
| THE ESTATE OF VICTORIA L. SOTO, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 3:15-cv-68 (RNC) |
| | ) | |
| VS. | ) | |
| | ) | |
| BUSHMASTER FIREARMS | ) | |
| INTERNATIONAL, LLC a/k/a/ FREEDOM | ) | |
| GROUP, INC. a/k/a/ REMINGTON OUTDOOR | ) | February 13, 2015 |
| GROUP, INC., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO REMAND

Defendants' attempt to shift this case to federal court is a misuse of the removal procedure. Fraudulent joinder, as its name implies, is about fraud *in the joinder*. It bars plaintiffs from joining non-diverse parties who have "no real connection with the controversy" and have been named solely to defeat diversity jurisdiction. *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998). A joinder is "fraudulent" when it ties a spurious claim against an in-state defendant to valid claims against diverse defendants.

Though fraudulent joinder is designed to prevent abuse of the courts through disingenuous pleading, it is vulnerable to a different kind of abuse: the misuse of removal to engage the merits of plaintiff's case under the pretext of a jurisdictional inquiry. This is precisely what defendants have done. Defendants do not even attempt to show in their Notice of Removal either that Riverview Sales, Inc. ("Riverview") has no true factual connection to this case – they could not since Riverview *sold* the Bushmaster XM15-E2S rifle to Nancy Lanza – or

that the claims and defenses *relating particularly to Riverview* are flawed.  The only argument

they offer to prove the fraudulent joinder of Riverview is based on the Protection of Lawful

Commerce in Arms Act ("PLCAA"), 15 U.S.C. §§ 7901 *et seq*., which they acknowledge is the

very same argument they will use to challenge plaintiffs' claims against them.  In their Notice of

Removal defendants assert that Riverview is "immune from liability under the PLCAA"; in their

January 21, 2015 letter to the Court, they assert that "plaintiffs' Complaint should be dismissed

under the Protection of Lawful Commerce in Arms Act."  Defendants thus ask the Court to find

that a party with an irrefutable connection to this case was "fraudulently" joined on the basis of

PLCAA – even though every other defendant in the case will assert the same defense.

The defendants' tactic, if successful, would stretch the doctrine of fraudulent joinder to

the point of absurdity and enlarge the scope of federal jurisdiction far beyond its constitutional

and statutory constraints.  For that reason, this tactic has been uniformly rejected by federal

courts for more than a century.  Under *Chesapeake & O. R. Co. v. Cockrell*, 232 U.S. 146

(1914), and its progeny, a defendant may not assert fraudulent joinder by arguing, in effect, that

the plaintiff's case is "ill founded as to all the defendants."  *Cockrell*, 232 U.S. at 153.  Indeed,

such a claim does not establish any flaw in the joinder of any of the defendants before the Court;

it merely frames a substantive dispute on the merits for the state court to resolve.  Defendants'

attempt to obtain adjudication of their arguments in this Court is a textbook example of this type

of claim.  This case must be remanded to the Connecticut Superior Court.

## I.      FACTUAL AND PROCEDURAL BACKGROUND.

This action arises out of the shooting at Sandy Hook Elementary School in Newtown on

December 14, 2012 that killed twenty first-grade children and six educators and wounded two

others.

### A.     The Allegations of the Complaint.

The plaintiffs in this case are Donna L. Soto, for the estate of her daughter, teacher

Victoria Leigh Soto; Ian and Nicole Hockley, for the estate of their six-year-old son, Dylan

Christopher Jack Hockley; David C. Wheeler, for the estate of his six-year-old son, Benjamin A.

Wheeler; Mary A. D'Avino, for the estate of her daughter, behavioral therapist Rachel Marie

D'Avino; Mark and Jacqueline Barden, for the estate of their seven-year-old son, Daniel G.

Barden; William D. Sherlach, for the estate of his wife, school psychologist Mary Joy Sherlach,

and for himself individually; Neil Heslin and Scarlett Lewis, for the estate of their six-year-old

son, Jesse McCord Lewis; Leonard Pozner, for the estate of his six-year-old son, Noah Samuel

Pozner; Gilles J. Rousseau, for the estate of his daughter, substitute teacher Lauren G. Rousseau;

and teacher Natalie Hammond on her own behalf.  Dkt. #1, Notice of Removal (hereafter

"Notice of Removal"), Ex. 1, Complaint (hereafter "Complaint") ¶¶ 35-44.  Plaintiffs are all

citizens of Connecticut.  Notice of Removal ¶ 11.

The defendants are the entities that manufactured, distributed, and sold the Bushmaster

XM15-E2S rifle used in the Sandy Hook shooting:  the Bushmaster Defendants, the Camfour

Defendants, and the Riverview Defendants.  Complaint ¶¶ 1-33.  The appearing Bushmaster

Defendants (who prefer to call themselves the Remington Defendants) are Remington Outdoor

Company, Inc. and Remington Arms Company, LLC.[1]  These defendants both have their

principal places of business in North Carolina and are incorporated in Delaware.  *See* Notice of

---

[1] The Complaint names additional entities as Bushmaster defendants.  These entities have not appeared.  The Remington Defendants have stated that those additional entities do not exist.  *See* Notice of Removal at 1 n.1.

[2] The Bushmaster Defendants do not claim that there is federal question jurisdiction.  PLCAA is not asserted as a basis for removal, and it could not in any event provide one.  Removal in anticipation of a federal defense is not permitted.  *See Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10, 14 (1983); *First American Casino Corp. v. Eastern Pequot Nation*, 175 F. Supp. 2d 205, 207 (D. Conn. 2000).

Removal ¶¶ 6-7.  The Camfour Defendants are Camfour, Inc. and Camfour Holding; they both have their principal place of business in Massachusetts and are incorporated there.  *Id.* ¶ 8.  The Riverview Defendants are Riverview Sales, Inc. and David LaGuercia.  Mr. LaGuercia, the federal firearm licensee of Riverview Sales, Inc. is a citizen of Massachusetts.  *Id.* ¶ 10. Riverview is incorporated in Connecticut and has its principal place of business here as well.  *Id.* ¶ 9.

Plaintiffs allege that the Bushmaster XM15-E2S rifle used in the shooting belongs to a specific category of weapons that were designed for the United States military to function as a lightweight but lethal service weapon.  Complaint ¶¶ 45-51.  The United States military and law enforcement are appropriate markets for these weapons due to their specialized needs and highly regimented safety protocols.  *Id.* ¶¶ 105-127.  The civilian population, by contrast, is a wholly inappropriate market for these weapons:  military rifles are grossly ill-suited to home defense and sold with no regard for the purchaser's training, experience, access to safe storage, or intent to make the weapon available to others.  *Id.* ¶¶ 128-143.  Repeated mass shootings of innocent Americans with rifles like the Bushmaster XM15-E2S – including several attacks against school children – have been widely publicized and are well known to the entities that manufacture and sell the Bushmaster XM15-E2S rifle.  *Id.* ¶¶ 144-48.

In each step in the distribution channel – the Bushmaster defendants' sale to the Camfour defendants, the Camfour defendants' sale to the Riverview defendants, and the Riverview defendants' sale to Nancy Lanza – the defendants negligently entrusted a weapon designed to inflict mass casualties to a user who would foreseeably endanger others by making the XM15-E2S available to persons unfit to possess it.  Based on these and additional allegations, plaintiffs assert claims of negligent entrustment, public nuisance, and violation of the Connecticut Unfair

4

Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.* against each of the defendants.

### B.    The Notice of Removal.

The Bushmaster Defendants removed the case to this Court on January 14, 2015.  They claim diversity jurisdiction as the sole basis for federal subject matter jurisdiction.[2]  The plaintiffs, however, are citizens of Connecticut; so is Riverview.  Notice of Removal ¶¶ 9, 11.

In an effort to manufacture complete diversity, defendants claim that Riverview is fraudulently joined because of PLCAA, 15 U.S.C. §§ 7901 *et seq.*  According to defendants, PLCAA provides a sweeping defense that bars all of plaintiffs' claims against Riverview.  Notice of Removal ¶¶ 20-30.  They acknowledge that PLCAA creates an exception for claims of negligent entrustment, but argue that plaintiffs' claims nonetheless do not come within this exception.  *Id.* ¶ 25.  They acknowledge that PLCAA creates another exception for claims based on the violation of a state statute applicable to the sale or marketing of firearms (known as the "predicate exception"), but assert that plaintiffs' CUTPA claims do not come within that exception.  *Id.* ¶ 27.  Nor, they claim, do any of plaintiffs' claims come within any other exception to PLCAA.  *Id.* ¶ 24.  Thus, the PLCAA defense, at least as asserted by the defendants, does not depend on anything unique to Riverview; the Bushmaster and Camfour defendants will argue that the same PLCAA defense shields them from liability to plaintiffs.

And indeed they have already made that argument.  On January 21, 2015, the Bushmaster Defendants sent a letter to the Court outlining the arguments they will make in connection with

---

[2] The Bushmaster Defendants do not claim that there is federal question jurisdiction.  PLCAA is not asserted as a basis for removal, and it could not in any event provide one.  Removal in anticipation of a federal defense is not permitted.  *See Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10, 14 (1983); *First American Casino Corp. v. Eastern Pequot Nation*, 175 F. Supp. 2d 205, 207 (D. Conn. 2000).

their anticipated Rule 12(b)(6) Motion to Dismiss plaintiffs' complaint.  In that letter, the

Bushmaster Defendants argue that PLCAA bars the claims against them.  Ex. A, 1/21/15 Letter,

at p. 2.  Repeating the assertions from their Notice of Removal, they claim that plaintiffs' claims

of negligent entrustment do not satisfy the PLCAA exception for negligent entrustment, and that

plaintiffs' CUTPA claims do not satisfy the predicate exception.  *Id.* at p. 3.  They claim further

that none of plaintiffs' claims satisfy any exception to PLCAA.  *Id.* at p. 2.  The Bushmaster

Defendants represent that the Camfour Defendants and Riverview Defendants also intend to

move to dismiss.  *Id.* at p. 4.

Pursuant to 28 U.S.C. § 1447, plaintiffs now seek remand to Connecticut Superior Court.

Defendants are scheduled to file Motions to Dismiss by February 20, 2015.  The Court has

ordered the parties to file a proposed briefing schedule for those Motions by February 18, 2015.

Because the Court lacks subject matter jurisdiction and thus cannot entertain any substantive

motions, plaintiffs will be seeking leave to defer filing their Memorandum in Opposition to

defendants' Rule 12(b)(6) Motions until after the Court addresses the threshold jurisdictional

issue, at which point we believe any such filing will be unnecessary.

## II.   FRAUDULENT JOINDER IS A NARROW EXCEPTION TO THE RULE OF COMPLETE DIVERSITY.

Federal courts are courts of limited jurisdiction, possessing only that power authorized by

the Constitution or by statute.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

(1994); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  "The requirement

that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the

judicial power of the United States' and is 'inflexible and without exception.'"  *Steel Co. v.

Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (quoting *Mansfield, C. & L.M.R. Co. v.

Swan*, 111 U.S. 379, 382 (1884)).  Evaluating the merits of a case before the threshold

jurisdictional question is resolved "carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers." *Id.* at 94.

### A.      Removal Jurisdiction Here Depends On Complete Diversity.

The statutes authorizing removal are strictly construed in deference to "congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (quotation marks and citation omitted).

> Not only does the language of the Act of 1887 evidence the Congressional purpose to restrict the jurisdiction of the federal courts on removal, but the policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation. The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution. Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941) (quotation marks and citation omitted).

Removal to federal court is possible only when the action concerns a matter over which the federal district courts have original subject matter jurisdiction. *See* 28 U.S.C. § 1441. The removing defendants claim that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Federal courts may exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332 only when there is complete diversity among the parties, that is to say when each plaintiff's citizenship is different from the citizenship of each defendant. *Caterpillar v. Lewis*, 519 U.S. 61, 68 (1996); *Briarpatch Limited, L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004).

Under these elementary principles, the Court lacks subject matter jurisdiction because there is incomplete diversity. The removing defendants assert, however, that the fraudulent

joinder exception to the requirement of complete diversity enables the Court to retain power over the case.  This assertion is wrong:  fraudulent joinder does not apply here.

> **B.      A Removing Defendant Bears A Heavy Burden To Satisfy The Fraudulent Joinder Exception.**

The principles of jurisdictional restraint are ever present in federal court.  Nonetheless, federal courts have developed the doctrine of fraudulent joinder, which recognizes that "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining defendants with no real connection with the controversy."  *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998) (citation and internal quotation marks omitted); *see also Brown v. Eli Lilly*, 654 F.3d 347, 356 (2d Cir. 2011); *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010).

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity."  *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998); *In re New England Mutual Life Ins. Co. Sales Practices Litigation*, 324 F. Supp. 2d 288, 300 (D. Mass. 2004) (Keeton, J.).  "It is both prudent and appropriate to keep the doctrine within narrow limits rather than to expand it.  Expansion of diversity jurisdiction remains the prerogative of Congress."  *Id.* at 300; *cf. Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) ("In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability.") (quotation marks and citation omitted).

Consequently, a defendant seeking to establish fraudulent joinder "bears [a] heavy burden."  *Brown*, 654 F.3d at 356 (quotation marks and citation omitted).  In order to show that naming a non-diverse defendant is a fraudulent joinder effected to defeat diversity, "a defendant

must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia*, 138 F.3d at 461.  Finally, when determining whether a fraudulent joinder has occurred, courts must weigh all factual and legal issues in favor of the plaintiff.  *See id.*

The defendants concede the first prong of the fraudulent joinder test.  They do not claim any "outright fraud" in the plaintiffs' pleadings, and they admit that Riverview sold the gun that was used in the Sandy Hook shootings.  They attempt nonetheless to proceed on the second prong of the test to establish that there is "no possibility" that plaintiffs can prevail against Riverview, arguing that PLCAA bars plaintiffs' claims against Riverview.  PLCAA, however, is a defense common to all the defendants in this case, not one particular to Riverview.  Indeed, the defendants intend to argue in forthcoming Rule 12(b)(6) motions that PLCAA bars the claims against them as well.  "Fraudulent joinder does not exist when an argument offered to prove the fraudulent joinder of non-diverse defendants," if accepted, would "simultaneously show[] that no case can be made against the diverse defendant or defendants."  *In re New England Mut. Life Ins. Co. Sales Prac. Litig.*, 324 F. Supp. 2d at 304.  The fraudulent joinder exception does not apply *at all* in this circumstance.

## III.  THE FRAUDULENT JOINDER EXCEPTION DOES NOT APPLY AT ALL HERE BECAUSE THE DEFENDANTS IDENTIFY NO FLAW IN THE PLEADINGS PARTICULAR TO RIVERVIEW, RELYING RATHER ON A DEFENSE COMMON TO ALL DEFENDANTS.

When a removing defendant's "showing that there is no reasonable basis for predicting that state law would allow recovery against an in-state defendant equally disposes of all defendants, there is no improper joinder of the in-state defendant.  In such a situation, the entire suit must be remanded to state court."  *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 571 (5th

9

Cir. 2004).  This principle is often called the common defense rule; it is simply a recognition of

the limits of fraudulent joinder analysis determined by *Chesapeake & O. R. Co. v. Cockrell*, 232

U.S. 146 (1914).  *See, e.g.*, *Smallwood*, 385 F.3d at 571 (following *Cockrell* in articulating

common defense rule); *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990)

(following *Cockrell* to articulate same rule); *In re New England Mut. Life Ins. Co. Sales*

*Practices Litig.*, 324 F. Supp. 2d at 304 (following *Cockrell* to hold that "fraudulent joinder does

not exist" when the argument offered to prove the fraudulent joinder of non-diverse defendants,

if assumed to be true, would "simultaneously show[] that no case can be made against the

diverse defendant or defendants").

> ### A.  The Fraudulent Joinder Exception Does Not Apply When The Basis For Removal Is An Attack On The Action As A Whole.

In *Cockrell*, a railroad was sued for negligence along with two of its employees.  The

employees' citizenship defeated diversity.  The railroad attempted to remove the case to federal

court, arguing that the employees were fraudulently joined to evade federal jurisdiction.  The

railroad claimed that the plaintiff could not recover against its employees because the claim of

negligence was "falsely or recklessly made and could not be proved."  *Cockrell*, 232 U.S. at 153.

Although the removing defendant framed this argument as going only to the claims against the

employees, under the principle of *respondeat superior* the liability of the railroad arose from the

liability of its in-state employees.

The Court first emphasized that the removing defendant's burden was to show the

impropriety of the joinder:

> [T]his right of removal cannot be defeated by fraudulent joinder of a resident
> defendant having no real connection with the controversy. . . .   So, when in such
> a case a resident defendant is joined with the nonresident, *the joinder*, even
> although fair upon its face, *may be shown by a petition for removal to be only a*
> *fraudulent device to prevent a removal*; but the showing must consist of a

statement of facts rightly engendering that conclusion.  Merely to traverse the allegations upon which the liability of the resident defendant is rested, or to apply the epithet 'fraudulent' to the joinder will not suffice; the *showing must be such as compels the conclusion that the joinder is without right and was made in bad faith*.

*Cockrell*, 232 U.S. at 153 (citations omitted; emphasis supplied).  The Court continued:

As no negligent act or omission personal to the railway company was charged, and its liability, like that of the two employees, was, in effect, predicated upon the alleged negligence of the latter, the [removing defendant's] showing *manifestly went to the merits of the action as an entirety, and not to the joinder*; *that is to say, it indicated that the plaintiff's case was ill founded as to all the defendants*.  Plainly, this was not such a showing as to engender or compel the conclusion that the two employees were wrongfully brought into a controversy which did not concern them.

*Id.* (emphasis supplied).

This analysis emphasizes both the nature and the limitations of the fraudulent joinder doctrine.  First, it is a test that scrutinizes the *joining of the non-diverse defendant* and looks for indications that there is a particular reason why *that defendant* does not belong in the lawsuit.  *Id.*; *see also Smallwood*, 385 F.3d at 573 ("Since the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was been properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case.")  Second, fraudulent joinder must be narrowly construed and applied.  *See Cockrell*, 232 U.S. at 153; *cf. Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) ("[I]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability.")

1. _Cockrell_'s Rule, Often Called the Common Defense Rule, Is Widely
Followed.

In _Boyer v. Snap-on Tools Corp._, 913 F.2d 108 (3d Cir. 1990), the Third Circuit relied on

_Cockrell_ to hold that a district court's finding of fraudulent joinder in the face of a common

defense was improper:  "the district court, in the guise of deciding whether the joinder was

fraudulent, stepped from the threshold jurisdictional issue into a decision on the merits. As the

Supreme Court held in [_Cockrell_], this it may not do."  _Id._ at 112; _see also Batoff v. State Farm_

_Ins. Co._, 977 F.2d 848, 851 (3d Cir. 1992) (repeating common defense rule as it had been

developed in _Boyer_).

In _Smallwood_, the Fifth Circuit, sitting _en banc_, held that the defendant could not argue

preemption under the Federal Railroad Safety Act under the guise of fraudulent joinder because,

as in _Cockrell_, the defense went to the heart of plaintiff's case against all defendants.  The court

reasoned:

> A claim of improper joinder by definition is directed toward joinder of the in-state
> party, a simple but easily obscured concept.  The party seeking removal bears a
> heavy burden of proving that the joinder of the in-state party was improper.

385 F.3d at 571.  The Court then tested the nature of the removal argument, by assuming

_arguendo_ that the removing defendants were correct that the plaintiff would fail to recover

against the in-state defendant, and asking whether, if that were so, the plaintiff's claims would

also fail against the other defendants.  In that circumstance, it held, fraudulent joinder simply

does not apply to create federal jurisdiction.  The court stated:

> In such cases, it makes little sense to single out the in-state defendants as "sham"
> defendants and call their joinder improper. In such circumstances, the allegation
> of improper joinder is actually an attack on the merits of plaintiff's case as such –
> an allegation that, as phrased by the Supreme Court in _Chesapeake & O.R. Co. v._
> _Cockrell_, "the plaintiff's case [is] ill founded as to all the defendants."

*Id.* at 574.  Thus, the court concluded that "[i]n such a situation, the entire suit must be remanded to state court."  *Id.* at 571.

In *Hunter v. Philip Morris USA*, 582 F.3d 1039 (9th Cir. 2009), the Ninth Circuit confronted facts similar to those of *Smallwood* and of this case: the use of the affirmative defense of federal preemption as a pretext to establish fraudulent joinder.  The court, after discussing the reasoning of *Smallwood* at length, reached the same conclusion:

> Here, as in *Smallwood*, the district court's decision that [the plaintiff]'s claims against [the non-diverse defendant] were preempted "effectively decided the entire case."  [*Smallwood*, 385 F.3d] at 571. The [moving] defendants' preemption argument accordingly should have been brought in the context of attacking the merits of [the plaintiff]'s case, rather than as a basis for removing the case to federal court.

*Hunter*, 582 F.3d at 1045.[3]

The common defense rule, as framed first by *Cockrell* and then by *Boyer*, *Smallwood* and *Hunter*, is now widely recognized.  *See Walton v. Bayer Corp.*, 643 F.3d 994, 1001 (7th Cir. 2011) (recognizing common defense rule but finding it inapplicable because defense raised would not, if valid, apply to all defendants); *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1282 n.4 (11th Cir. 2006) (recognizing common defense rule but not reaching question of whether to apply it); *In re New England Mut. Life Ins. Co. Sales Practices Litig.*, 324 F. Supp. 2d at 298-304 (discussing *Cockrell*, various authorities in Fifth Circuit including *Smallwood*, and

---

[3] *Hunter* distinguished *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313 (9th Cir. 1998), which had found that a statute of limitations defense common to all defendants was a permissible means by which to establish fraudulent joinder.  Though at first blush *Ritchey* appeared to support the defendants' federal preemption argument, the *Hunter* court identified an important distinction:  a "statute of limitations defense is a 'rather unique' defense that 'does not truly go to the merits of the plaintiff's claim in any sense.'"  *Hunter*, 582 F.3d at 1045 (citing *Ritchey*, 139 F.3d at 1319).  Thus, the court's consideration of the statute of limitations defense in *Ritchie* did not compromise its limited role with respect to the fraudulent joinder analysis.  The same could not be said for defendants' preemption defense in *Hunter*, which compelled "an inquiry into the merits of the plaintiff's claims against all defendants and an analysis of federal law."  *Id.* at 1045.

13

other common defense rule cases and concluding simply that it must follow *Cockrell*); Vairo, 16 *Moore's Federal Prac.* § 107.14, at nn.57.13-57.18 (discussing *Smallwood* and *Hunter* in subsection titled "Doctrine Generally Inapplicable When Fraudulent Joinder Showing Resolves All Claims); Wright, Miller, et al., 13F *Federal Practice & Procedure: Jurisdiction* § 3641.1, at nn.40-41 (3d ed.) (discussing only *Smallwood* in text but collecting cases in notes 43-44); *Brooks v. Merck & Co., Inc.*, 443 F. Supp. 2d 994, 1002  (S.D. Ill. 2006) (collecting cases); *Feldman's Medical Center Pharmacy, Inc. v. CareFirst, Inc.*, 959 F. Supp. 2d 783, 797 (D. Md. 2013) (applying common defense rule).

The Second Circuit has not had occasion to address this aspect of *Cockrell*.  In *Intershoe, Inc. v. Filanto S.P.A.*, 97 F. Supp. 2d 471, 475 (S.D.N.Y. 2000) (Wood, J.), however, the court effectively applied the rule of *Cockrell*.  New York plaintiffs sued an Italian company and its chairman, who was also a citizen of New York.  The Italian company removed, asserting that its chairman had been fraudulently joined because the plaintiff's business tort claims against it could not stand under New York law.  The court observed that "defendants' attack on the legal sufficiency of the prima facie tort claim misconceives the appropriate inquiry into fraudulent joinder of a plaintiff.  *To show fraudulent joinder, defendants must show a flaw specific to the joinder of the non-diverse party, which is the jurisdictionally relevant aspect of the claim.*"  *Id.* at 475 (emphasis supplied).  The court determined that the defendants' attack on the plaintiff's case went to the claims against all defendants, not just the chairman.  Therefore, there was no fraudulent joinder and the defendants' proper course was to move to dismiss in state court.  *Id.*

> 2.   The Reasoning in *In re New England Mut. Life Ins. Co. Sales Practices Litig.* Is Particularly Instructive Here.

The court's reasoning in *In re New England Mut. Life Ins. Co. Sales Practices Litig.*, 324 F. Supp. 2d at 298-304, is particularly informative here because the court (Keeton, J.) applied

*Cockrell* while following Second Circuit precedent, explaining its reasons for doing so very clearly.  The court determined that since the First Circuit had not yet addressed fraudulent joinder, it would follow the Second Circuit's test for fraudulent joinder.  *Id.* at 298 (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001)).  As set forth in Section II.B above, this test allows the removing defendant to attempt to establish fraudulent joinder by showing "outright fraud committed in the plaintiff's pleadings" or "that there is no possibility, based on the pleadings," that the plaintiff can state a claim against the non-diverse defendant in state court.  *Id.; see also Brown*, 654 F.3d at 356; *Pampillonia*, 138 F.3d at 461.

The court then considered *Cockrell* and the common defense rule cases.  It observed that it was bound to follow *Cockrell*, and that *Cockrell* holds that "fraudulent joinder does not exist when an argument offered to prove the fraudulent joinder of non-diverse defendants" would, if accepted, "simultaneously show[] that no case exists against the diverse defendant or defendants."  *Id.* at 300.  It continued, "[i]n those circumstances, no legitimate reason exists to label the non-diverse defendants as fraudulently joined.  *Cockrell* clarifies and, in effect, narrows the doctrine of fraudulent joinder."  *Id.*

**B.     The PLCAA Defense Argued To Prove the Fraudulent Joinder of Riverview Will Be Argued Equally To Attack Plaintiffs' Claims Against The Other Defendants.**

The litmus test for a common defense argument is whether "the [removing defendant's] showing manifestly went to the merits of the action as an entirety, and not to the joinder; that is to say, it indicated that the plaintiff's case was ill founded as to all the defendants."  *Cockrell*, 232 U.S. at 153 (citations omitted); *see also Smallwood*, 385 F.3d at 571 ("when a nonresident defendant's showing that there is no reasonable basis for predicting that state law would allow recovery against an in-state defendant," if accepted, would "equally dispose[] of all defendants,

15

there is no improper joinder of the in-state defendant"); *Hunter*, 582 F.3d at 1045 (where district court's decision that the plaintiff's claims against the non-diverse defendant were preempted "'effectively decided the entire case,' the [moving] defendants' preemption argument accordingly should have been brought in the context of attacking the merits of [the plaintiff]'s case, rather than as a basis for removing the case to federal court") (citing *Smallwood*, 385 F.3d at 571); *In re New England Mut. Life Ins. Co. Sales Practices Litig.*, 324 F. Supp. 2d at 300 ("fraudulent joinder does not exist when an argument offered to prove the fraudulent joinder of non-diverse defendants" would, if accepted, "simultaneously show[] that no case exists against the diverse defendant or defendants").

Like the arguments made by the removing defendants in *Cockrell*, *Smallwood*, and *Hunter*, the Bushmaster defendants' removal argument is really an attack on the plaintiffs' case as a whole – and they apparently prefer to mount that attack in federal court rather than state court. But that choice is not theirs to make under our law. The Bushmaster defendants concede for purposes of this analysis that Riverview sold the XM15-E2S that was used in the Sandy Hook shooting to Nancy Lanza. *See* Notice of Removal ¶¶ 14-15 (repeating these allegations from plaintiffs' complaint). They do not point to any particular deficiency in plaintiffs' state law claims *against Riverview particularly* (and there is none). *See id.* ¶¶ 24-30. They invite the Court to find that Riverview is fraudulently joined because, they claim, PLCAA bars plaintiffs' claims against it. *See id.* ¶¶ 24-30 (outlining Riverview's arguments under PLCAA). They also admit that they will assert the same PLCAA defense by Motion to Dismiss. Ex. A, Jan. 21, 2015 Letter to Court (outlining defendants' arguments under PLCAA).

Plaintiffs contest the defendants' attack on the pleadings in all respects: PLCAA does not bar plaintiffs' against Riverview, nor does it bar plaintiffs' claims against the other defendants.

16

The teaching of *Cockrell* and its progeny, however, is that it would be jurisdictional overstepping to engage the merits at this time and in this Court. Our laws trust state courts to make reasoned decisions, allowing for federal adjudication of state law claims only in limited circumstances not present here. Before engaging the merits, the Court must determine whether the defendants have borne their heavy burden to show that the fraudulent joinder exception applies in this case. *See Brown*, 654 F.3d at 356; *Pampillonia*, 138 F.3d at 461; *Hunter*, 582 F.3d at 1046. In order to establish that the exception can apply at all, they must establish that their basis for removal goes to a particular flaw in the joinder of Riverview in this action, and not to "the merits of the action as an entirety." *See Cockrell*, 232 U.S. at 153. According to defendants' expansive description of their PLCAA defense, they cannot.

It is defendants' burden to establish by clear and convincing evidence that their fraudulent joinder argument under PLCAA, if accepted, would *not* bar all claims. But the record defendants have made shows exactly the opposite: defendants intend to file Rule 12(b)(6) motions on the basis of PLCAA, using exactly the same arguments that they used to argue Riverview is fraudulently joined. *Cf. Hunter*, 582 F.3d at 1042 (noting that District Court had first dismissed in-state defendant as fraudulently joined on basis of federal preemption defense, then dismissed remaining defendants' claims under Rule 12(b)(6) on basis of same preemption defense and other defects, and reversing because in that circumstance, there was no fraudulent joinder); *Carrillo v. JP Morgan Chase Bank, N.A.*, 2012 WL 3276971, at *4 (W.D. Tex. Aug. 9, 2012) (commenting that removing defendant made exactly the same argument in its motion to dismiss that it used to argue improper joinder and applying common defense rule); *Fee v. Chesapeake Appalachia, L.L.C.*, 2014 WL 2769119, at *4 (E.D. Ky. June 18, 2014) (noting that

removing defendants admitted that they were presenting the same arguments with respect to in-state defendant and claims against them and applying common defense rule).

Defendants will certainly have an opportunity to raise these substantive challenges in state court, where this action belongs.  Plaintiffs welcome the opportunity to address them then.

**C.      The Defendants' Attempted Removal Violates the Well-Pleaded Complaint Rule.**

It is "settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 14 (1983); *see also Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) ("Federal jurisdiction cannot be predicated on on an actual or anticipated defense.").

As the Fifth Circuit observed in *Smallwood*, the railroad was not permitted to remove on the basis of its federal preemption defense, and "nonetheless, Illinois Central did just that:  it removed on the basis of a defense of federal conflict preemption, urged as the bar to a reasonable basis for predicting recovery against MDOT, the in-state defendant."  *Smallwood*, 385 F.3d at 576.  Likewise in *Hunter*, the defendant cigarette manufacturers were not permitted to rely on implied federal preemption of claims against them to remove on the basis of federal question jurisdiction.  *See Hunter*, 582 F.3d at 1044-47.  Their attempt to use that same preemption as a basis for fraudulent joinder could not create federal jurisdiction either.  *Id.*  Thus, the common defense rule "leaves intact the well-pleaded complaint doctrine with all its intended reach."  *Smallwood*, 385 F.3d at 576.  As in *Smallwood* and *Hunter*, the availability of a federal defense – here PLCAA – cannot serve as a pretext for removal.

18

**IV.  THE PETITION FOR REMOVAL IS DEFECTIVE AND THE ACTION MUST BE REMANDED FOR THIS REASON AS WELL.**

Because the defendants fail to establish that the fraudulent joinder exception is met, the Notice of Removal also violates the forum defendant rule.  28 U.S.C. § 1441(b)(2) provides:  "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  Section 1441(b)(2) is a rule of removal procedure.  *Shapiro v. Logistec USA, Inc.*, 412 F.3d 307, 313 (2005).  Riverview, a properly joined and served defendant, is a citizen of the State of Connecticut.  The removal petition therefore fails to comply with § 1441(b)(2).

**V.  IN THE EVENT THE COURT DOES NOT REMAND PURSUANT TO THE COMMON DEFENSE RULE AND SECTION 1441(b)(2), WHICH IT SHOULD, PLAINTIFFS SEEK REMAND ON ADDITIONAL SUBJECT MATTER JURISDICTION GROUNDS.**

As observed in *Cockrell*, if the Court were to allow removal, its decision would go to the merits of plaintiffs' claims against all defendants.  This, of course, is exactly why removal is attractive to the Bushmaster defendants.  Despite plaintiffs' well-pleaded complaint and absolute right to name Riverview as a defendant, the Bushmaster defendants removed to this Court in an effort to obtain a preemptive ruling going to the heart of *their* liability.

If the Court were to determine that the common defense rule is not dispositive – and that determination would be error because the common defense rule *is* dispositive – we will then respond to the removing defendants' substantive attack on the pleadings, as articulated in their Notice of Removal.[4]  We have chosen not to brief that position here because to do so would blur

---

[4] "Because jurisdiction goes to the issue of the court's power, a motion to remand based on lack of subject matter jurisdiction may be made at any time. Either a court has the power to adjudicate a case or it does not. Indeed, a federal court has an independent duty to determine that it has

19

the distinction between jurisdictional analysis and substantive analysis, and that is exactly what defendants' improper removal is designed to do.

## VI.    CONCLUSION.

For these reasons, this case must be remanded to the Superior Court of the State of Connecticut.  Pursuant to 28 U.S.C. § 1447(c), plaintiffs request that they be awarded fees and costs incurred as a result of the removal.


THE PLAINTIFFS,


By       _____/s/ Joshua D. Koskoff_____
Joshua D. Koskoff (ct15619)
Alinor C. Sterling (ct17207)
KOSKOFF, KOSKOFF & BIEDER
350 Fairfield Ave.
Bridgeport, CT  06604
Tel:  (203) 336-4421

---

subject matter jurisdiction and may raise the issue *sua sponte.*"  *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 510 F. Supp. 2d 299, 305 (S.D.N.Y. 2007); *D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broadcasting, Inc.*, 550 F. Supp. 2d 481, 486 (S.D.N.Y. 2008) (same); Fed. R. Civ. P. 12(h)(3).

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2015, a copy of the foregoing Motion and accompanying Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.


_____
   */s/* Joshua D. Koskoff
   Joshua D. Koskoff (ct15619)