IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DONNA L. SOTO, ADMINISTRATRIX OF THE ESTATE OF VICTORIA L. SOTO, *et al.* | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 3:15-cv-68 (RNC) |
| VS. | ) ) | |
| BUSHMASTER FIREARMS INTERNATIONAL, LLC a/k/a/ FREEDOM GROUP, INC. a/k/a/ REMINGTON OUTDOOR GROUP, INC., *et al.* | ) ) ) ) ) | March 27, 2015 |
| Defendants. | ) | |

## REPLY IN SUPPORT OF MOTION TO REMAND

The flaws in the Bushmaster Defendants' claim to diversity jurisdiction, which were never well hidden in the first place, are now completely apparent. The Bushmaster Defendants have conceded that their claim that Riverview is fraudulently joined rests exclusively on PLCAA, and that their own 12(b)(6) Motion, when it is eventually filed, will likewise assert PLCAA as a bar to *all* of plaintiffs' claims. These concessions are dispositive. In their opposition papers, moreover, defendants fail to refute that it is their burden to establish fraudulent joinder. Under *Chesapeake & O.R. Co. v. Cockrell*, 232 U.S. 146 (1914), and the record created by the Bushmaster Defendants themselves, the outcome is clear: they fail to establish fraudulent joinder. Their fraudulent joinder argument is an impermissible attempt to avoid the well-pleaded complaint rule, not a showing that Riverview is an improper defendant. The Court must therefore remand this case.

Knowing they cannot prevail under *Cockrell*, the Bushmaster Defendants first simply urge the Court to ignore it and consider the merits. As plaintiffs have already argued at length, fundamental principles of jurisdictional restraint require that the Court consider *Cockrell* before

1

addressing the merits. Defendants then misstate the *Cockrell* test as a test of the merits of plaintiffs' claims. But *Cockrell* does not test the merits, nor does it test *plaintiffs'* claims per se. It tests the removing defendants' fraudulent joinder argument. The Court assumes the defense asserted against the in-state defendant to be true (*Cockrell* calls this "the showing"), much as it would assume the truth of the plaintiffs' allegations in a Rule 12(b)(6) analysis. It then assesses whether those *assumedly* successful arguments would also dispose of the plaintiffs' claims against the diverse defendants; *Cockrell* never reaches the merits, and deliberately so.

The Bushmaster Defendants finally attempt to avoid *Cockrell* by pointing to differences between plaintiffs' allegations against Riverview and our allegations against them. To establish fraudulent joinder, defendants would need to prove not just that allegations against them differ in some respect from those against Riverview, *but that the difference results in PLCAA being potentially unavailable to them as a defense*, a critical point that they completely ignore. They claim plaintiffs assert a product liability claim against them particularly – which is simply not so – and that they are sued as a "manufacturer," not as a "seller" – in fact, we alleged they are both. Even if defendants had correctly represented the allegations of the Complaint, they have not even attempted to argue that these supposed distinctions render PLCAA potentially unavailable to them as defense.

### I.     The Bushmaster Defendants Concede Dispositive Issues.

The Bushmaster Defendants do not dispute that their claim of fraudulent joinder is based solely on PLCAA. They do not dispute that their Motion to Dismiss will be as described in their January 21, 2015 Letter – based also on PLCAA. If there were any remaining doubt that PLCAA is a common defense, the Bushmaster Defendants dispelled it by withholding their

12(b)(6) Motion, which was due to February 20, 2015. Their failure to file only confirms that their allegations to establish fraudulent joinder are their 12(b)(6) arguments.

These concessions are dispositive: they establish that PLCAA is asserted as a common defense. Defendants nonetheless seek refuge in obfuscation. They argue that the Court must engage in "a probing review of each claim against each defendant and the corresponding defenses to each claim." *See* Opp. at 8. While in *some* cases courts engaged in a more thorough investigation of the pleadings because the issues framed on appeal required that degree of complexity, in other cases, such as *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568 (5th Cir. 2004), and *Hunter v. Phillip Morris USA*, 582 F.3d 1039 (9th Cir. 2009), a straightforward record led to a simple conclusion.[1] The issues here – framed by the Bushmaster Defendants themselves in their Notice of Removal, January 21, 2015 Letter, and Opposition – are simple. Defendants have themselves demonstrated that Riverview is properly joined.

Finally, the Bushmaster Defendants do not dispute that it is their burden to establish fraudulent joinder. Plaintiffs pointed out explicitly and repeatedly in our opening motion that the removing defendant has the burden to establish that its claim of fraudulent joinder is within the limits of that doctrine as defined by *Cockrell*. DN 27-1, Pl. Mem. at 8 (citing *Brown v. Eli Lilly*,

---

[1] *Smallwood*, 385 F.3d at 574, which involves a common defense of federal preemption, devotes only a few sentences to the pleadings. Likewise *Hunter*, 582 F.3d at 1044-45, spends only a paragraph or two on the pleadings in its analysis of the common defense rule. *Hunter* does then go on, however, to correct the district court's determination that the plaintiff's claims against the in-state defendant were preempted, a necessary step in light of the difficulty it would pose for the plaintiff on remand if that erroneous determination had remained unaddressed. *Walton v. Bayer Corp.*, 643 F.3d 994, 1001 (7th Cir. 2011), involved a learned intermediary defense that defeated the plaintiffs' claims against the in-state defendant as a matter of law, but did not defeat the claims against the diverse defendants in the same manner. In determining that the common defense rule did not apply, the court simply tested the elements of the learned intermediary defense. *Boone v. Citigroup, Inc.*, 416 F.3d 382, 392-93 (5th Cir. 2005), contains a more in-depth analysis. This makes sense since *Boone* involved limitations defenses and tolling doctrines that were available to some defendants but not to others, and arose on a well-developed factual record following discovery and a summary judgment proceeding.

654 F.3d 347, 356 (2d Cir. 2011)), 10-11 (citing *Cockrell*, 232 U.S. at 153), 17.  It is black letter law that the party invoking the Court's jurisdiction bears the burden to establish it.  *E.g. McNutt v. General Motors Accept. Corp. of Indiana*, 298 U.S. 178, 189 (1936) (party invoking a federal court's jurisdiction "must carry throughout the ligation the burden of showing that he is properly in court").  This point is also made in cases on which defendants themselves rely.  *E.g. Smallwood*, 385 F.3d at 573 ("To justify removal on improper joinder grounds, Illinois Central was required to prove that the joinder of MDOT was improper.").  The Bushmaster Defendants make no effort to refute these authorities.[2]

      They do, however, make the fatal error of arguing *as if* it were plaintiffs' burden to establish fraudulent joinder.  For example, they assert that our choice to leave them to their proof reflects a weakness in our position.  *E.g.* Opp. at 8 ("Plaintiffs here have stopped short of scrutinizing how the PLCAA impacts each claim against each defendant.").  It is not our burden to salvage defendants' spurious claim of fraudulent joinder.  That burden rests wholly and exclusively with the Bushmaster Defendants.  Instead of proving fraudulent joinder, however, they have only confirmed that this case belongs in state court.

---

[2] The removing defendants' failure to appreciate governing procedural rules manifests again at page 2, footnote 1 of their brief, where they contend that plaintiffs' failure to address the merits of their removal arguments "constitutes waiver."  This contention misstates the record and the law.  Plaintiffs challenged the merits arguments by indicating both in our opening papers and in a scheduling motion that we contest them.  DN 27-1, Pl. Mem. at 16 ("Plaintiffs contest the defendants' attack on the pleadings in all respects: PLCAA does not bar plaintiffs' claims against Riverview, nor does it bar plaintiffs' claims against the other defendants."); DN 30, Pl. Sched. Mot. at 6 (requesting that the Court schedule briefing on merits arguments for remand following determination of the *Cockrell* issue).  And federal subject matter jurisdiction is put in issue merely by suggestion – thus the merits issues are *already* in issue in this case.  Finally, challenges to subject matter jurisdiction are *never* waived.  *Moodie v. Fed. Reserve Bank of New York*, 58 F.3d 879, 882 (2d Cir. 1995) ("'Defects in subject matter jurisdiction cannot be waived and may be raised at any time during the proceedings.'"*)*; *Marcella v. Capital Dist. Phys. Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002) (federal jurisdiction "may not be conferred in any way by the parties, including by means of waiver or estoppel"); *see also* Fed. R. Civ. P. 12(h)(3) (subject matter jurisdiction may be raised even by suggestion).

> II. **The Bushmaster Defendants Misstate and Overstate the Fraudulent Joinder Test:** *Cockrell*'s **Rule Concerning the Limits of Fraudulent Joinder Does Not Involve a Determination of the Merits.**

To begin with first principles, plaintiffs here invoke the rule of *Cockrell*, which describes the limits of the fraudulent joinder doctrine and is binding on the Court. To the extent defendants characterize plaintiffs' argument as requiring the Court to adopt the common defense rule as it is articulated in *Smallwood* and *Hunter*, they are imprecise. We refer to the common defense cases for support, but we do not argue that the Court must adopt the test articulated in those cases to decide this Motion. While *Smallwood* and *Hunter* persuasively demonstrate the importance of limiting fraudulent joinder based on a federal defense, the parameters of the fraudulent joinder exception defined by *Cockrell* already suffice to determine the issues here.

> A. *Cockrell* **Does Not Address the Merits of the Claim of Fraudulent Joinder.**

The Bushmaster Defendants fundamentally misunderstand the *Cockrell* test. This misconception is most apparent when they make the astonishing claim that by invoking the common defense rule, "Plaintiffs are forced to advocate the position that they have a 'wholly meritless suit.'" Opp. at 7. It is the *removing defendants* who have the burden to show fraudulent joinder. *See* Part I, at p. 4 above. We merely raised the shortcoming in their fraudulent joinder argument. The impossible task of salvaging it resides with them. Our position is and always will be that we prevail on the merits. To suggest we have taken any other position is absurd and blatantly misstates the record. *See, e.g.*, DN 27-1, Pl. Mem. at 16-17; DN 30, Pl. Sched. Mot. at 6; *see also* Part III below (briefly addressing merits arguments).

*Cockrell* does not test the merits of a claim of fraudulent joinder. In the key analytical passage, the Court states,

> As no negligent act or omission personal to the railway company was charged, and its liability, like that of the two employees, was, in effect, predicated upon the

5

> alleged negligence of the latter, *the showing* manifestly went to the merits of the action as an entirety, and not to the joinder; that is to say, *it* [the showing] *indicated that the plaintiff's case was ill-founded as to all the defendants*.

*Cockrell*, 232 U.S. at 153 (emphasis supplied). The "showing" is the removing defendant's showing in support of fraudulent joinder, credited as true. No other reading of this passage is possible. It cannot be the plaintiff's allegations, because those were facially sufficient. Nor is the Court relying on the "showing" to make an *actual* determination that the removing defendant is correct or that the entire case is ill-founded any more than it would decide the merits in a Rule 12(b)(6) motion. We know this with absolute certainty because the *Cockrell* appeal arose following a determination of the merits in favor of the plaintiff and against the removing defendant. *Cockrell*, 232 U.S. at 149 (before appeal was taken, the action "proceeded to trial which resulted in a judgment against the company").[3]

Cases following *Cockrell* adopt its language and use it to mean the same thing. *E.g. Smallwood*, 385 F.3d at 574 ("[W]hen a nonresident defendant's showing that there is no reasonable basis for predicting that state law would allow recovery against an in-state defendant equally disposes of all defendants, there is no improper joinder."); *Boone*, 416 F.3d at 391; *Hunter*, 582 F.3d at 1044. *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108 (3d Cir. 1990), explains that the test avoids the merits because to pre-determine them without jurisdiction would be error. In *Boyer*, the removing defendants argued that the in-state defendant was fraudulently joined due to the existence of a release. The court held that it need not investigate the validity of the release because that issue was equally applicable to the removing defendant. *Id.* at 112. It would be absurd to read that statement (as defendants would) as a disposition of the merits of the release

---

[3] *Hunter* illustrates the same point. There, the court determined that there was no showing of fraudulent joinder due to the common defense rule and then went on to clarify that the plaintiff stated claims against the in-state defendant. 582 F.3d at 1045, 1047. *A fortiori*, the common defense analysis could not have involved a rejection of the merits of the plaintiff's claims.

defense, because immediately afterward the court criticizes the lower court for determining the validity of the release and thereby "in the guise of deciding whether the joinder was fraudulent, stepp[ing] from the threshold jurisdictional issue into a decision on the merits." *Id.*

Defendants here rely on a passage from *Walton v. Bayer Corp.*, 643 F.3d 994, 1002 (7th Cir. 2011), as if it establishes that a plaintiff who raises the common defense rule successfully in federal court condemns her case on remand. Opp. at 7-8. For the reasons already given, *Walton* would completely misunderstand and misapply *Cockrell* if this were indeed its holding. The statement cited is not a characterization of the common defense rule *per se*, but rather dictum particular to the facts of the case. In fact, the holding in *Walton* supports plaintiffs. In *Walton*, the plaintiff brought an action against a pharmacy and Bayer in connection with ill effects from Yazmin. Bayer removed, asserting that the learned intermediary doctrine barred claims against the in-state pharmacy. The plaintiff then argued that her claims against Bayer were the same as those against the in-state pharmacy and thus the learned intermediary doctrine was a common defense. She ignored her own allegation that Bayer concealed information concerning Yazmin, rendering the defense potentially ineffective as to Bayer. *Walton* therefore found that the common defense rule did not apply.[4]

---

[4] In dicta, *Walton* goes on to discuss a hypothetical possibility of judicial estoppel arising due to the way the plaintiff framed her arguments (and even then not clearly reconcilable with *Cockrell*). It appears that the *Walton* plaintiff did not clarify that Bayer had the burden of proof and that she was leaving Bayer to its proof to show that there was no common defense. Thus, the court felt it could have been led into error by her representations (although in fact it was not), rather than looking to Bayer to show there was no common defense. *Id.* at 1002. Obviously, it is very important to avoid this kind of confusion. This is exactly why we have taken pains to demonstrate that the test focuses on the showing by the removing defendants; that they have the burden to prove PLCAA is not a common defense; and that while we invoke the common defense rule, we maintain that we have alleged claims permitted by PLCAA against all defendants.

### B. Defendants Fail to Establish Riverview is Fraudulently Joined.

The Bushmaster Defendants assert that the Fifth Circuit's interpretation of the common defense rule in *Boone*, 416 F.3d at 389-90, governs the Court's analysis and establishes that the common defense rule does not apply here.

As indicated above, the Court is not bound to follow the letter of the Fifth Circuit's interpretation of *Cockrell*, although that authority is certainly persuasive. *Boone*'s conclusion as to the scope of the common defense rule may be an overly narrow interpretation of *Cockrell*. Judge Keeton, in *In re New England Mut. Life Ins. Co. Sales Prac. Litig.*, 324 F. Supp. 2d at 306, came to a different conclusion:

> The concerns that underlie *Cockrell* also apply to arguments offered to prove fraudulent joinder that simultaneously show that *some claims* against the diverse defendant or defendants must fail. Such arguments do not engender or compel the conclusion that the non-diverse defendants were wrongfully brought into a controversy that did not concern them. They do not offer a legitimate reason to set apart the diverse defendants as "fraudulently joined."

*Id.* (emphasis in original). Defendants ignore this reading completely, likely because it deprives them of *any* argument that they can establish fraudulent joinder. Nonetheless, the Court need not reach the question of whether *Boone*'s test or Judge Keeton's test is the right test, because defendants have not even met their burden under *Boone*.

The Bushmaster Defendants assert that the common defense rule does not apply because plaintiffs pleaded an "analytically distinct" products liability claim against them. Opp. at 9-10, citing *Boone*, 416 F.3d at 390. While relying on *Boone*'s wording, they ignore its holding. In *Boone*, the limitations defenses that were the basis for the claim of fraudulent joinder *were potentially ineffective as to the diverse defendants*. *E.g. id.* at 392 ("[I]t is facially obvious that the pendency of the Arizona suit could not toll limitations as to any of the resident defendants. The tolling issue, however, cannot be resolved on that basis as to the diverse defendants because

8

at least two of them were named defendants in the Arizona suit."). Under *Boone*, to establish an analytically distinct claim defendants would need to show not just any difference in plaintiffs' allegations but that the difference in the allegations renders PLCAA *ineffective as a defense as to them*.[5]

Defendants do not even argue that differences in plaintiffs' allegations against them may cause their PLCAA defense to be potentially ineffective, and again it is their burden to do so. They argue that plaintiffs have asserted a products liability claim against them. Opp. at 9. We have not; our claims sound in negligent entrustment, violation of CUTPA, and public nuisance. And even if we had alleged such a claim, *the Bushmaster Defendants have not even attempted to show that it would not be barred by PLCAA*. In fact, they have already taken the *opposite* position. *See* DN 1 ¶ 22 (asserting that PLCAA bars *any* qualified civil liability action against a seller or manufacturer of a firearm); Jan. 21, 2015 Letter, at 2 ("Plaintiffs' lawsuit falls squarely within the protections afforded to firearm manufacturers by Congress and 'it should be immediately dismissed.'").[6]

Defendants also argue that PLCAA "treats claims against manufacturers and sellers differently." Opp. at 9. They contend that there is an exception to immunity for a negligent entrustment claim against a seller, but not a manufacturer. *Id.* Again, they mistake our pleadings. We allege the Bushmaster Defendants are sellers *and* manufacturers. *E.g.* Compl. ¶ 25. And even if we accepted *arguendo* their premise that the negligent entrustment exception applies only to sellers and they are only manufacturers, all their argument would establish is that

---

[5] As stated previously, *Walton* makes the same point. 643 F.3d at 1001. *Rainwater v. Lamar Life Ins. Co.*, 391 F.3d 636, 638 (5th Cir. 2004), also relied on by defendants, is in accord.

[6] We vehemently disagree with these contentions. *See* Part III, below. But *our* position as to the merits is simply not in issue under *Cockrell*. *Cockrell* tests the *removing defendants'* "showing" and puts the burden on *them* to demonstrate their showing is not a common defense.

they have a *stronger* PLCAA defense than Riverview. (Again, this is their argument, not ours.) In short, the Bushmaster Defendants again fail to establish that PLCAA is not a common defense.

Finally, in an argument whose placement (last) and treatment (cursory) shows just how much strength defendants feel it has, defendants assert that the Court should ignore *Cockrell* because it arose in a *respondeat superior* context, and because the test applied in this Circuit is "inconsistent with the adoption of the common defense rule." Opp. at 13-14. To be sure, *Cockrell* articulates a limitation on fraudulent joinder in a *respondeat* case; it does not follow that the limitation it so clearly articulates applies *only* in *respondeat* cases. Both the Fifth and the Ninth Circuit have determined that this limitation is particularly important where, as here, a federal defense is the basis for a removing defendant's showing of fraudulent joinder. To hold otherwise potentially enables defendants to circumvent the well pleaded complaint rule. Nor is *Cockrell* inconsistent with the Second Circuit's test. *See In re New England Mut. Life Ins. Co. Sales Prac. Litig.*, 324 F. Supp. 2d at 304 (following Second Circuit test and *Cockrell*). The need to apply a merits test simply does not arise when a removing defendant has failed to identify a flaw specific to the plaintiff's case against the in-state defendant. If the removing defendant fails in this initial showing, the case belongs in state court.

### III. Plaintiffs in Any Event Prevail on the Merits.

The Bushmaster Defendants have repeatedly invited the Court to ignore the limitations of fraudulent joinder established by *Cockrell* and skip to the merits. We have resisted because that is the rightful role of a Connecticut court. However, in light of the Bushmaster Defendants' repeated accusation that plaintiffs' (proper) focus on the jurisdictional issue amounts to a

concession as to the merits, plaintiffs feel obligated to address – in an introductory fashion – the speciousness of that charge.

Plaintiffs' negligent entrustment and Connecticut Unfair Trade Practices Act claims against Riverview are not barred by PLCAA.[7] The test for establishing fraudulent joinder is onerous for the removing party. The removing defendant "must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is *no possibility*, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998) (emphasis supplied). Moreover, "all factual and legal issues must be resolved in favor of the plaintiff." *Id.* Since the Bushmaster Defendants do not allege fraud, they bear the "heavy burden" of establishing that plaintiffs have no possibility of stating a valid cause of action against Riverview. *Id.* They have not, and cannot, meet this burden.

### A. Plaintiffs' Claims of Negligent Entrustment Against Riverview Satisfy PLCAA's Negligent Entrustment Exception.

The Bushmaster Defendants do not dispute either that PLCAA provides an exception for claims of negligent entrustment, or that plaintiffs have stated a claim for negligent entrustment under Connecticut common law.[8] Rather, their sole argument is that plaintiffs' negligent

---

[7] Due to space considerations in this Reply brief, as well as plaintiffs' intention to address these issues shortly in a separate Supplemental Motion to Remand, plaintiffs address the negligent entrustment and CUTPA claims very briefly here and do not address the public nuisance claims at all.

[8] Section 390 of the Restatement (Second) of Torts "governs liability for negligent entrustment of dangerous instrumentalities" in Connecticut. *Bryda v. McLeod*, 2004 WL 1786822, at *2 (Conn. Super. Ct. July 12, 2004). Under that standard, a seller of a firearm may be held liable under the common law tort of negligent entrustment for supplying a firearm to a person that the seller knows, or reasonably should know, is likely to use it in a manner involving unreasonable risk of physical harm to others. Plaintiffs have alleged each of those elements against Riverview, and those allegations are binding here. *See* Compl. Count Three ¶¶ 174-189.

entrustment claim will fail because it is foreclosed by PLCAA's negligent entrustment definition. That definition reads:

> "[N]egligent entrustment" means the supplying of a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others.

15 U.S.C. § 7903(5)(B). According to the Bushmaster Defendants, this language precludes any action where the person to whom the firearm was supplied did not *directly* cause the harm. In other words, they posit that because the firearm was sold to Nancy Lanza but "used" by Adam Lanza "to cause physical injuries to others . . . [PLCAA] precludes a negligent entrustment action against Riverview Sales." Opp. at 4. The implication of this argument is that the only "use" contemplated by the statute is shooting the firearm to cause physical injury. Defendants do not identify any basis for this unduly narrow reading, nor could they: it is contrary to fundamental canons of statutory interpretation and contradicted by U.S. Supreme Court precedent.

### 1. The Bushmaster Defendants' Restrictive Interpretation is Untenable.

"Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *United States v. Aleynikov*, 676 F.3d 71, 76 (2d Cir. 2012).

#### a. The Plain Meaning of "Use" Encompasses the Transfer of the Weapon to Another.

"A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). Since "use" is not defined in PLCAA, it must be construed in accord with its natural meaning. In *Smith v. United States*, 508 U.S. 223 (1993), the Supreme

Court was called upon to discern "the everyday meaning" of the word "use" after a criminal defendant challenged a penalty enhancement on the grounds that trading a firearm in exchange for drugs did not constitute a "use" of the firearm under the statute.  After consulting multiple dictionaries and reviewing past interpretations of the term, the Court concluded that the ordinary meaning of "use" is expansive.  Notably, it rejected the defendant's argument that the statute required proof that the firearm was used *as a weapon*, noting simply that "the words 'as a weapon' appear nowhere in the statute." *Id.* at 229.

*Smith* – which was decided over a decade before PLCAA was enacted – disposes of defendants' restrictive reading.  It is absurd to assume that the ordinary meaning of "use" is actually "discharge."  "It is one thing to say that the ordinary meaning of 'uses a firearm' *includes* using a firearm as a weapon, since that is the intended purpose of a firearm and the example of 'use' that most immediately comes to mind.  But it is quite another to conclude that, as a result, the phrase also *excludes* any other use." *Smith*, 444 U.S. at 230.  Indeed, given that "one can use a firearm in a number of ways," *id.*, the meaning of "use" in PLCAA encompasses lending or transferring a firearm to another.

        b.  <u>The Language and Design of the Statute As a Whole Confirm This Ordinary Meaning.</u>

"In ascertaining the plain meaning of a statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier*, 486 U.S. 281, 291 (1988).  When "Congress uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 156 (2d Cir. 2013) (quotation marks and citation omitted).  In PLCAA, Congress twice employed language that can be obviously contrasted with its choice of the word "use."  In the threshold definition of

13

"qualified civil liability," the statute proscribes certain actions that result "from the criminal or *unlawful misuse* of a qualified product." *See* 15 U.S.C. § 7903(5) (emphasis added).  The statute goes on to enumerate several types of claims that are not considered a "qualified civil liability action."  The exception governing product liability claims refers to scenarios where "the *discharge* of the [firearm] was caused by a volitional act that constituted a criminal offense[.]" *Id.* at § 7903(5)(A)(v) (emphasis added).

Congress' decision to include the terms "discharge" and "unlawful misuse" in the text of PLCAA indicates that it knew how to employ narrower terms to refer to specific uses of firearms, and that it did so when such terms were appropriate.  Consequently, "use" must be read not merely to mean "discharge" or "unlawful misuse."  *Cf. Milner v. Dep't of Navy*, 562 U.S. 562, 131 S. Ct. 1259, 1272 (2011) (holding that "law enforcement purposes" must be read to "involve more than just investigation and prosecution" because other parts of the statute "demonstrate [that] Congress knew how to refer to these narrower activities").

> **B.  Plaintiffs' CUTPA Claims Against Riverview Satisfy PLCAA's Predicate Statute Exception.**

PLCAA, while barring "qualified civil liability actions," also provides that a qualified civil liability action shall *not* include "an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought[.]"  15 U.S.C. § 7903(5)(A)(iii).  This is known as the predicate statute exception.

Plaintiffs claim that Riverview violated CUTPA, and that these claims come within the predicate statute exception to PLCAA.  The Bushmaster Defendants acknowledge the exception but argue that it does not apply to plaintiffs' CUTPA claims.  Opp. at 4.  They rely on *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 403 (2d Cir. 2004), to establish that the

14

predicate statute exception applies only to statutes that "expressly regulate firearms." However, *City of New York*'s holding is far broader. The court stated:

> We find nothing in the statute [PLCAA] that requires any express language regarding firearms to be included in a statute in order for that statute to fall within the predicate exception. We decline to foreclose the possibility that, under certain circumstances, state courts may apply a statute of general applicability to the type of conduct that the City complains of, in which case such a statute might qualify as a predicate statute.

*Id.* at 400. It remains the role of a Connecticut court to say that CUTPA is such a statute. *See Pampillonia*, 138 F.3d at 460-61 (in assessing whether there is "no possibility" that a plaintiff can prevail against in-state defendant, court must resolve all legal issues in favor of the plaintiff).

THE PLAINTIFFS,

By    /s/ Alinor C. Sterling (ct17207)
Joshua D. Koskoff (ct15619)
Alinor C. Sterling (ct17207)
KOSKOFF, KOSKOFF & BIEDER
350 Fairfield Ave.
Bridgeport, CT  06604
Tel:  (203) 336-4421

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2015, a copy of the foregoing Motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

    /s/ Alinor C. Sterling (ct17207)
Joshua D. Koskoff (ct15619)
Alinor C. Sterling (ct17207)