**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| DONNA L. SOTO, ADMINISTRATRIX OF ) <br> THE ESTATE OF VICTORIA L. SOTO, *et al.* ) <br> ) <br>        Plaintiffs, ) <br> VS. ) <br> ) <br> BUSHMASTER FIREARMS ) <br> INTERNATIONAL, LLC a/k/a FREEDOM ) <br> GROUP, INC. a/k/a REMINGTON OUTDOOR ) <br> GROUP, INC, *et al.* ) <br> ) <br>        Defendants. ) | Case No. 3:15-CV-00068-RNC <br><br><br> April 4, 2015 |

**[PROPOSED]**
**DEFENDANTS REMINGTON ARMS COMPANY, LLC**
**AND REMINGTON OUTDOOR COMPANY, INC.'S**
<u>**SUR-REPLY TO PLAINTIFFS' REPLY ON THE MOTION TO REMAND**</u>

I.     **Plaintiffs Have Alleged "No Reasonable Basis" For A Claim Against Riverview Sales.**

Plaintiffs alleged three claims against Riverview Sales: negligent entrustment; violation of CUTPA; and creation of a public nuisance. In their Reply, Plaintiffs do not contest that their public nuisance claim is barred by the PLCAA, purporting to save this issue for "a separate Supplemental Motion to Remand." (Reply at 11 n.7.) Plaintiffs' arguments for why there is a reasonable basis for liability against Riverview Sales on their other two claims fail.

A.     **Plaintiffs' "negligent entrustment" claim against Riverview Sales is barred.**

The Court should reject Plaintiffs' attempt to expand the definition of negligent entrustment found in 15 U.S.C. § 7903(5)(B) to fit the facts of their case. Tellingly, Plaintiffs' Reply stops short of articulating exactly how the sale of the rifle to Nancy Lanza forms the factual basis of a negligent entrustment action defined in the PLCAA, which requires the firearm to be supplied to "the person" who then "use[s]" it to cause an unreasonable risk of harm to herself or others. But Plaintiffs have not alleged that Nancy Lanza "use[d]" the rifle at all. She legally purchased the rifle from Riverview Sales in 2010 and, nearly three years later, her son took the rifle from their shared home (after first killing her) and committed his heinous crimes. Adam Lanza "use[d]" the rifle, not his mother. There is no basis to allege that Riverview Sales negligently entrusted the rifle to Nancy Lanza.

Plaintiffs argue that firearm "use" in the context of the PLCAA's definition of negligent entrustment can mean more than firearm discharge based on the Supreme Court's analysis of the word "use" in an entirely different statute enacted 37-years before the PLCAA. *See Smith v. United States*, 508 U.S. 223 (1993) (interpreting § 924(c)(1) of the Gun Control Act of 1968). Indeed, the Supreme Court has recognized that "[m]ost words have different shades of meaning and consequently may be variously construed, not only when they occur in different statutes, but

1

when used more than once in the same statute or even in the same section." *Environmental Defense v. Duke Energy Corporation*, 549 U.S. 561, 574 (2007) (citing *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932)).  The same language in different statutes may be construed together only when the statutes are *in pari materia*.  *Firstar Bank, N.A. v. Faul*, 253 F. 3d 982, 990 (7th Cir. 2001) (before construing different statutes *in pari materia*, a court must determine that the purposes and subjects of the acts are in fact similar); *Lieberman v. FTC*, 771 F.2d 32, 40 (2d Cir. 1985) (even same term within different version of same statute is not *in pari materia* where goals of the statute changed).

Section 7903(5)(B) of the PLCAA and Section 924(c)(1) of the Gun Control Act ("GCA") cannot be construed *in pari materia*.  Section 924(c)(1) of the GCA provides for enhanced punishment of persons convicted of using or carrying a firearm "during or in relation to any crime of violence or drug trafficking crime."  Section 7903(5) of the PLCAA, on the other hand, provides for gun seller immunity in civil actions "resulting from the criminal or unlawful use" of firearms by third parties. There is no basis to conclude that Congress intended that a "use" of a firearm under the PLCAA's definition of negligent entrustment would have the same meaning as a "use" of a firearm for purposes of enhanced punishment under the GCA.  *See Firstar Bank*, 253 F.3d at 990 (citing cases refusing to apply the *in pari materia* canon "to laws superficially relating to similar subjects where a finer examination revealed the purposes of the laws varied").

In the context of civil tort law, "use" of a firearm can only mean employing the firearm's functional features to cause or threaten injury.  A firearm cannot be "use[d]" to cause a risk of injury other than by shooting it, or at least threatening to shoot it.  And more importantly, the "use" of a firearm under the definition of negligent entrustment must create "unreasonable risk of physical injury to *the person* or others." 15 U.S.C. § 7903(5)(B) (emphasis added).  It is impossible

for a person to "use" a firearm to harm herself without discharging it (*e.g.*, suicide). Any construction of "use" to include anything other than firing or threatening to fire a firearm is contrary to the plain meaning of the text and purpose of the PLCAA.

In *Smith*, the defendant was found to have "used" a firearm under Section 924(c)(1) when he traded the firearm for drugs. *Smith*, 508 U.S. at 226. As discussed above, Section 924(c)(1) provides for enhanced punishment of persons convicted of carrying or using a firearm "during or in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(1). As the Court subsequently observed in *Bailey v. United States*, "even a reference to a firearm in [a criminal's] possession could satisfy § 924(c)(1)," provided the reference was "calculated to bring about a change in the circumstance of the predicate offense . . . just as the silent but obvious and forceful presence of a gun on a table can be a 'use.'" 516 U.S. 137, 147 (1995). But while criminal laws address many different kinds of firearm "uses," including illegal possession and armed robbery, civil tort law exists to compensate victims who have been wrongly injured. The PLCAA was enacted to protect firearm sellers against tort claims for damages arising from third-party misuse of firearms, and thus should be construed in the context of civil tort law, not federal criminal law.

Interpreting the "negligent entrustment" exception to encompass only situations in which "the person to whom" the seller "suppl[ies]" the firearm is "the person" who thereafter "use[s]" the firearm to harm "the person or others," 15 U.S.C. § 7903(5)(B), reflects the reality that a seller who entrusts an instrumentality to a customer—whether a car, a firearm or other potentially dangerous instrumentality—can only assess the competency of the customer with whom it is dealing to use the instrumentality safely. *See Phillips v. Lucky Gunner, LLC*, No.14-cv-2822, 2015 U.S. Dist. LEXIS 39284, \*19 (D. Colo. Mar. 27, 2015) (dismissing all claims against sellers as barred by the PLCAA, including a negligent entrustment claim: "the standard for negligent entrustment liability

3

is narrower than the ordinary negligence standard because the manner in which the chattel is ultimately used is outside the supplier's control"). Extending liability under a negligent entrustment theory for the actions of persons unknown to the supplier, who later gain access to the instrumentality, eliminates the concept of "entrustment" from the cause of action altogether, and potentially leads to unlimited supplier liability. *See id.* at *19.

Even assuming *arguendo* that the expansive definition of the term "use" that Plaintiffs urge is appropriate in this context, their pleadings fail to establish such use *by Nancy Lanza*.  Relying on the Supreme Court's construction of the term "use" in the GCA, Plaintiffs assert that "the meaning of 'use' in PLCAA encompasses lending or transferring a firearm to another." (Reply at 13.) Plaintiffs' Complaint does not allege, however, that Nancy Lanza lent or transferred the firearm to Adam Lanza.  *See* Compl. ¶ 154 (alleging that Adam Lanza "retrieved" the firearm on the morning of December 14, 2012).  To the extent Plaintiffs assert that passive conduct—such as Nancy Lanza's mere legal possession of the firearm in her home—constitutes "use" in the context of the PLCAA, they attempt to twist the tort of negligent entrustment beyond recognition.  The PLCAA was enacted, in part, to prohibit this very type of claim.

A use of an entrusted firearm by a person *other* than "the person" who was supplied the firearm cannot trigger the negligent entrustment exception.  This limitation is consistent with congressional intent:

> This provision would cover only cases where the dealer knows or should know that the person who is buying the gun is likely to misuse it and the buyer does, in fact, misuse it. The courthouse door is still shut to victims of the far more common practice of dealers negligently selling guns to traffickers who, in turn, supply criminals.

Committee on the Judiciary, *Report together with Dissenting and Additional Dissenting Views on the Protection of Lawful Commerce in Arms Act*, H.R. REP. No. 109-124, at 143 (June 14, 2005)

4

(available at http://www.gpo.gov/fdsys/pkg/CRPT-109hrpt124/pdf/CRPT-109hrpt124.pdf (last visited Apr. 3, 2015)). Although resort to legislative history is unnecessary when there is no ambiguity, the Remington Defendants provide this legislative history as it underscores the limited scope of the negligent entrustment exception to PLCAA immunity. *Cf. Davis v. United States*, 495 U.S. 472, 479 (1990) (phrase "for the use of"—a phrase which "on its face . . . could support any number of different meanings," is narrowed by reference to legislative history).[1]

### B. CUTPA is not a statute that regulates the "sale or marketing" of firearms and is thus not a predicate exception under the PLCAA.

CUTPA does not expressly regulate the sale or marketing of firearms, nor does the statute clearly implicate such activities. Rather, CUTPA is a statute of general application which prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). Alleged violations of statutes of general application, such as CUTPA, cannot serve as the predicate for an action under § 7903(5)(A)(iii), which requires a "knowing" violation of a statute "applicable to the sale or marketing of firearms." 15 U.S.C. § 7903(5)(A)(iii) (predicate exception).

The Second Circuit has held that the predicate exception encompasses only (1) "statutes that expressly regulate firearms"; (2) statutes that "courts have applied to the sale and marketing of firearms"; or (3) "statutes that do not expressly regulate firearms but that clearly can be said to implicate the purchase and sale of firearms." *City of New York v. Beretta U.S.A. Corp*, 524 F.3d

---

[1] *Gilland v. Sportsmen's Outpost, Inc.*, No. X04CV095032765S, 2011 Conn. Super. LEXIS 1320 (Conn. Super. Ct. May 26, 2011), is instructive on, *inter alia*, the scope of negligent entrustment. In *Gilland*, the plaintiff was shot with a handgun the shooter had stolen from the defendant firearm dealer. The court rejected plaintiffs' argument that the dealer had entrusted the handgun to the shooter "for his use." *Id*. at 33. To the contrary, the theft of the handgun by the person who caused plaintiffs' harm was "the opposite of being provided a handgun for use since it alleges a taking without permission." *Id*. *Gilland* stands for the simple proposition that to invoke the negligent entrustment exception, the seller must supply the firearm to the buyer "for his use."

384, 404 (2d Cir. 2008), *cert denied*, 129 S. Ct. 3320 (2009). *City of New York* addressed whether the New York state public nuisance statute was the type of statute that Congress intended to serve as a predicate statute under Section 7903(5)(A)(iii). After examining the context in which Congress used the word "applicable," various canons of statutory construction, and the legislative history of the PLCAA, the Court of Appeals concluded that the public nuisance statute was not the type of statute that qualifies for the predicate exception under Section 7903(5)(A)(iii). *Id*. at 398-404 ("[T]he predicate exception was meant to apply only to statutes that actually regulate the firearms industry.").

While there are a number of federal and state statutes that actually regulate the firearms industry[2] or that "clearly can be said to implicate the purchase and sale of firearms," CUTPA is not among them.[3] Indeed, finding that a knowing violation of CUTPA—an unfair or deceptive act—can serve as a predicate violation under Section 7903(5)(A)(iii) would allow the exception to "swallow" the protections afforded by the PLCAA and violate the principle that statutory exceptions are to be applied narrowly to preserve the statute's primary purpose. *See City of New York*, 329 F.3d at 403; *Ileto v. Glock*, 565 F.3d 1126, 1134-36 (9th Cir. 2009) (rejecting plaintiffs' argument that general California tort statutes can serve as predicate statutes); *Estate of Charlot v. Bushmaster Firearms, Inc.*, 628 F.Supp.2d 174, 180-81 (D.D.C. 2009) (Strict Liability Act not a predicate statute); *Phillips*, 2015 U.S. Dist. LEXIS 39284 at *14-15 (rejecting argument that municipal code provisions, many of which referenced firearms, could serve as predicate statutes).

---

[2] *See* 15 U.S.C. § 7901(a)(4) ("The manufacture, importation, possession, sale and use of firearms and ammunition in the United States are heavily regulated by Federal, State and local laws.").

[3] Plaintiffs refer to a single passage from *City of New York* suggesting that, "under certain circumstances, state courts may apply a statute of general applicability to the type of conduct that the City complains of, in which case such a statute might qualify as a predicate statute." *Id.* at 400. It is telling, however, that Plaintiffs make no effort to distinguish CUTPA from the public nuisance statute that the Second Circuit rejected as a predicate statute in *City of New York*.

6

## II.     Plaintiffs Have The Burden To Show That The Second Circuit Would Adopt The "Common Defense Rule" And That It Should Apply Here.

Within the Second Circuit, the "common defense rule" is not a recognized exception to the doctrine of improper or "fraudulent" joinder as a basis for removal to federal court. Although the Remington Defendants have the burden of demonstrating that there is "no reasonable basis" for the claims alleged against Riverview Sales, once improper joinder is established, Plaintiffs have the burden to show that the common defense rule would be adopted by the Second Circuit and, if so, that it applies to the circumstances of case. The Supreme Court has noted that, since 28 U.S.C. § 1441(a) was amended in 1948 to introduce exceptions to removal, "there has been no question that whenever the subject matter of an action qualifies it for removal, the burden is on a plaintiff to find an express exception." *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 698 (2003).[4]

Plaintiffs have not demonstrated that the Second Circuit would adopt the common defense rule as an exception to the *Pampillonia* test for improper joinder. *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459 (2d Cir. 1998). Despite Plaintiffs' heavy reliance on the common defense rule in their opening memorandum, Plaintiffs now say they simply "invoke the rule of *Cockrell*" and "do not argue that the Court must adopt the test articulated in" the common defense cases such as *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568 (5th Cir. 2004) ("*Smallwood II*"). (*Compare* Pls.' Mem. in Supp. of Remand at 9-14 *with* Reply at 5.) Putting aside that Plaintiffs now soft-pedal the extent of their reliance on the common defense rule, Plaintiffs' suggestion that the rule of *Chesapeake & O.R. Co. v. Cockrell*, 232 U.S. 146 (1914), standing alone, is "sufficient" to

---

[4] Analogous circumstances are removals based on the Class Action Fairness Act ("CAFA"), which, like the doctrine of improper joinder, is an exception to complete diversity of citizenship since it permits removal with only minimal diversity. After a CAFA-based removal, a plaintiff seeking to remand because of an exception to CAFA bears the burden of establishing that the exception applies, thereby requiring remand. *Ava Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp. 2d 522, 528 (S.D.N.Y. 2008) (collecting cases on point); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018 (9th Cir. 2007); *Hart v. FedEx Ground Package System Inc.*, 457 F.3d 675 (7th Cir. 2006); *Frazier v. Pioneer Americas LLC*, 455 F.3d 542 (5th Cir. 2006).

7

mandate remand to state court in this case ignores the limited scope of the Supreme Court's decision. *Cockrell* stands for the proposition that removal is improper where the diverse defendant's liability is "predicated" on the liability of the non-diverse defendant, such as in the *respondeat superior* context. *Id.* at 153. Since Plaintiffs assert claims against the Remington Defendants that are independent from (and not predicated on) those asserted against Riverview Sales, *Cockrell* is inapposite to the case at bar. (*See* Opp'n at 13-14.)

Even if this Court were to adopt the common defense rule, Plaintiffs' explanation for why it applies here is muddled. Plaintiffs' confusion stems from their inability to settle on what rule they believe the Second Circuit would adopt. They advocate for the rule of *Cockrell* combined with some, but not all, decisions from the Fifth and Ninth Circuits. (Reply at 5.) For example, they embrace the majority opinion in *Smallwood II*, but discount the Fifth Circuit's subsequent decision in *Boone v. Citigroup, Inc.*, 416 F.3d 382 (5th Cir. 2005), because it "narrow[ed]" *Smallwood II* beyond their liking. (*Id.* at 8, and 3 n.1.) Plaintiffs' wayfaring aside, the test is whether a particular "defense" applies to the in-state defendant, and, if so, would that "showing" by itself "necessarily" and "equally" "compel" dismissal of *all* claims against *all* parties. *Boone*, 416 F.3d at 390.

Plaintiffs have also taken contradictory positions on whether the PLCAA provides a defense to any claims against any parties at all. On the one hand, Plaintiffs argue that the PLCAA provides defenses against *all* claims against *all* defendants (Reply at 2-3); and, on the other hand, they argue that their "negligent entrustment and [CUTPA] claims against Riverview are not barred by PLCAA" (*id.* at 11; *see id.* at 7 n.4). This analysis runs head-on into judicial estoppel. *Walton v. Bayer Corp.*, 643 F.3d 994, 1003 (7th Cir. 2011) ("If as we believe judicial estoppel would bar the plaintiff's claim against the Bayer defendants in state court were we to order the case remanded, a victory for her in the present phase of the litigation would be Pyrrhic.").

8

### III. The Remington Defendants Are *Not* "Sellers" Under The PLCAA.

Plaintiffs do not dispute that the PLCAA treats "manufacturers" and "sellers" differently. Realizing that this distinction is an impediment to application of the common defense rule, Plaintiffs argue they have sued the Remington Defendants as both "manufacturers" and "sellers" and that, therefore, the Riverview Sales' PLCAA defenses apply "equally" to bar claims against the Remington Defendants. But Plaintiffs cannot rewrite the PLCAA or ignore the allegations of their own Complaint in order to recast the Remington Defendants in a role they did not have with respect to the firearm sold to Nancy Lanza.

A "seller" is defined in the PLCAA as "any person engaged in the business of *selling firearms at wholesale or retail*." 15 U.S.C. § 7903(6) (incorporating definition found at 18 U.S.C. § 921(a)(11) (emphasis added)). The Remington Defendants were not "sellers" under this definition or the allegations of Plaintiffs' Complaint. The Remington Defendants are alleged by Plaintiffs to have manufactured and sold the firearm to a wholesale "distributor" who thereafter sold the firearm to Riverview Sales, a retail dealer. (Compl. at ¶¶ 25-34.) Plaintiffs, in fact, specifically allege that the wholesale distributor and retail seller were "sellers within the meaning of § 7903(6)." (*Id*. at ¶¶ 30, 34.) Plaintiffs have not and cannot make the same allegation as to the Remington Defendants because their role was the "manufacturer" of the firearm and nothing more. *See* 15 U.S.C. § 7903(2) (a "manufacturer" is a person "engaged in the business of manufacturing the [qualified] product in interstate commerce and who is licensed to engage in business as such a manufacturer under chapter 44 of title 18"). The unambiguous terms of both the PLCAA and the Complaint refute Plaintiffs' belated contention.

### IV. Plaintiffs Alleged A Product Liability Claim Against The Remington Defendants.

Plaintiffs insist they have not pleaded an analytically distinct product liability claim against

9

the Remington Defendants. But they allege the Remington Defendants (1) designed a firearm without "safety mechanisms that prevent the weapon from being fired by someone other than the purchaser" (Compl. at Count One, ¶ 183), and (2) "had the ability to design and manufacture" the firearm to "not accept large capacity magazines." (*Id.* at ¶ 184.)  Further, according to Plaintiffs, the Remington Defendants' conduct in designing and manufacturing the firearm used by Adam Lanza was a "substantial factor resulting in" their damages. (*Id.* at ¶ 191.)

Under Connecticut law, all actions for damages allegedly caused by the use of products fall under the Connecticut Product Liability Act ("CPLA"), including "claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, . . . of any product." Conn. Gen. Stat. § 52-572m.  A CPLA claim "shall be in lieu of all other claims . . . for harm caused by a product." Conn. Gen. Stat. § 52-572n.  Here, Plaintiffs' product defect claims against the Remington Defendants are governed by the CPLA. *See Hurley v. Heart Physicians, P.C.*, 278 Conn. 305, 325 (Conn. 2006) (A product liability action "is one that seeks damages for personal injuries, including wrongful death . . . caused by the defective product.").

Plaintiffs' product liability allegations against the Remington Defendants and the defenses to those allegations are "analytically distinct" and "in addition to" the claims they assert against Riverview Sales.  Thus, even if the common defense rule were adopted by the Second Circuit, it would not apply here. *See Boone*, 416 F.3d at 391-92 ("some of [the plaintiffs'] claims against the non-resident defendants [were] analytically distinct from and in addition to their … claims against … the resident defendants….[Because] the failure of [the plaintiffs'] claims against the resident defendants does not in and of itself cause those of the claims against the non-resident defendants .. to fail as well," the rule did not apply).

For all of the foregoing reasons, the Motion for Remand should be denied.

    Respectfully submitted,

    /s/ *James B. Vogts*
    One of the Attorneys for Defendants,
    Remington Arms Company, LLC, and
    Remington Outdoor Company, Inc.

Jonathan P. Whitcomb (CT15014) (jwhitcomb@dmoc.com)
Matthew C. Wagner (CT25926) (mwagner@dmoc.com)
Diserio Martin O'Connor & Castiglioni LLP
One Atlantic Street
Stamford, Connecticut 06901
(203) 358-0800

James B. Vogts (phv07263) (jvogts@smbtrials.com)
Andrew A. Lothson (phv07262) (alothson@smbtrials.com)
Swanson, Martin & Bell, LLP
330 North Wabash, Suite 3300
Chicago, IL 60611
(312) 321-9100

**Attorneys for Defendants,**
**Remington Arms Company, LLC, and**
**Remington Outdoor Company, Inc.**

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 4th day of April, 2015, I caused to be served a copy of the foregoing document on all counsel of record listed below, via the Court's ECF system.

Joshua D. Koskoff
Alinor Sterling
Koskoff, Koskoff & Bieder, P.C.
Bridgeport, CT 06604
Tel: 203-336-4421
Fax: 203-368-3244
jkoskoff@koskoff.com
asterling@koskoff.com
**Attorneys for Plaintiffs**

Christopher Renzulli
Scott Charles Allan
Renzulli Law Firm, LLP
81 Main Street, Suite 508
White Plains, NY 10601
Tel:  914-285-0700
Fax: 914-285-1213
crenzulli@renzullilaw.com
sallan@renzullilaw.com
**Attorneys for Defendants Camfour, Inc. and Camfour Holding, Inc.**

Michael Ryan Patrick
Patrick, LLC
6 Landmark Square, Fourth Floor
Stamford, CT 06901
Tel:  203-541-0355
Fax: 203-724-2393
Michael@pllclaw.com
**Attorney for Defendants Riverview Sales, Inc. and David LaGuercia**

                                                  */s/  James B. Vogts*
                                                  One of the Attorneys for Defendants, Remington Arms Company, LLC, and Remington Outdoor Company, Inc.