IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| DONNA L. SOTO, ADMINISTRATRIX OF THE ESTATE OF VICTORIA L. SOTO, *et al.* ) ) ) | |
| Plaintiffs, ) ) | Civil Action No. 3:15-cv-68 (RNC) |
| VS. ) ) | |
| BUSHMASTER FIREARMS INTERNATIONAL, LLC a/k/a/ FREEDOM GROUP, INC. a/k/a/ REMINGTON OUTDOOR GROUP, INC., *et al.* ) ) ) ) ) | June 19, 2015 |
| Defendants. ) | |

## **REPLY IN SUPPORT OF SUPPLEMENTAL MOTION TO REMAND**

The issue before the Court, framed now by two rounds of briefing is this: the Bushmaster Defendants seek preemptive federal adjudication of their federal defense, using fraudulent joinder as a pretext to obtain a ruling in this Court. They assert that the Court should determine questions of first impression concerning the interpretation of PLCAA and the scope of Connecticut's negligent entrustment and CUTPA causes of action, rather than permitting a state court to do so. This argument is fundamentally offensive to our federalist system: it ignores the well-pleaded complaint rule, the sovereignty of Connecticut's courts, principles of comity, and the dictates of the Second Circuit's fraudulent joinder test. It is also not a proper basis on which to decide jurisdiction. The Court must remand to Connecticut's courts.

**I.   STATE COURTS ARE DEEMED COMPETENT TO INTERPRET FEDERAL STATUTES LIKE PLCAA.**

The Bushmaster Defendants insist that this Court must construe PLCAA. They point to PLCAA's preemptive effect and to federal cases that have construed PLCAA *after* jurisdiction is

1

established.  Def. Br. at 2-3, 5.[1]  These decisions do not stand for the proposition that the Court can resolve contested legal issues that belong in the Connecticut courts *in order to establish its jurisdiction*.  Cf. *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 575-76 (5th Cir. 2004) (en banc) (use of fraudulent joinder to obtain preemptive federal adjudication of federal defense is a "circumvention of the well-pleaded complaint rule").

Defendants also imply that since PLCAA is a federal statute, this Court is better suited to decide its meaning.  That contention cannot coexist with principles of federalism and comity.  "[T]he state courts are perfectly competent to decide Federal questions arising before them, and it is their duty to do so."  *Defiance Water Co. v. City of Defiance*, 191 U.S. 184, 193-94 (1903); *id.* at 194 ("[T]he presumption is in all cases that the state courts will do what the … laws of the United States require."); *see generally Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) ("'[C]omity' includes . . . the belief that the National Government will fare best if the States … are left free to perform their separate functions[.]").

*Johnson v. American Towers, LLC*, 781 F.3d 693 (4th Cir. 2015), *see* Def. Br. at 4-6, is inapposite because it concerns primarily federal question jurisdiction.  In *Johnson*, the removing defendant argued there was original jurisdiction due to complete preemption of the plaintiffs' claims by the Federal Communications Act and diversity jurisdiction arising out of fraudulent joinder.  The court first construed the FCA to determine whether there was federal question jurisdiction and found there was not.  It then extended that construction to find that the claims against the in-state defendant were preempted so as to give rise to diversity.  *Johnson*'s extension

---

[1] Defendants cite cases that simply do not help them, including cases in which there was no claim of fraudulent joinder, Def. Br. at 2 (relying on *City of New York v. Beretta*, 524 F.3d 384 (2d Cir. 2008) and others); cases noting that a federal court is not bound by a state court's construction of a federal statute, Def. Br. at 3 (relying on *Charlot v. Bushmaster Firearms, Inc.*, 628 F. Supp. 2d 174 (D.D.C. 2009) and others); and cases describing preemption, Def. Br. at 5 (relying on *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) and others).

of the jurisdictional inquiry, while questionable, should have no persuasive significance for this Court because the defendants in *Johnson* had a good faith basis for raising the FCA in the context of federal question jurisdiction.[2]

Both *Cockrell* and the *Pampillonia* test yield the same result: the construction of PLCAA belongs in state court. *Chesapeake & O.R. Co. v. Cockrell*, 232 U.S. 146 (1914) (fraudulent joinder should not be used to obtain preemptive federal ruling on common defense);[3] *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998) (only if there is "no possibility" that plaintiffs "can state a cause of action against the non-diverse defendant in state court" can fraudulent joinder be established). None of the federal courts of appeals has closely examined PLCAA's negligent entrustment provision, and the Second and Ninth Circuits have reached different conclusions concerning the predicate provision. If this Court were to determine the application of PLCAA to this case, it would engage in the same statutory construction analysis a state court would follow, with exactly the same guidance from the statutory text and canons of construction. The question is *not* whether this Court might reach a "better" ruling concerning the meaning of PLCAA.[4] *See CUSA LLC v. Travelers Co., Inc.*, 2007 WL 3046270, at *3 (D. Conn. Oct. 15, 2007) (Hall, J.) ("[T]he plaintiff's claims must be judged by how they would fare in state court, not by how they would fare in *federal* court.") (emphasis in original).

---

[2] The Bushmaster Defendants do *not* claim that PLCAA confers federal question jurisdiction.
[3] The Bushmaster Defendants assert that in *Pelman ex rel. Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 516 (S.D.N.Y. 2003), the court "had the opportunity but declined to adopt the [common defense] rule." Def. Br. at 6. That case does not involve a true common defense; the ruling on the in-state defendants' claims did not resolve the remaining claims. In addition, it appears the common defense rule was not raised as the court's opinion makes no mention of it.
[4] A Connecticut court will be guided by federal precedent but is empowered and entitled to reach its own principled construction of PLCAA. *See Johnson v. Williams*, 133 S. Ct. 1088, 1098 (2013) ("[T]he views of the federal courts of appeals do not bind [a state court][.]"); *compare Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422, 434 (Ind. App. 2007) ("[T]he predicate exception is unambiguous."), *with City of New York*, 524 F.3d at 401 (finding "applicable" as used in predicate provision to be ambiguous).

If there is *any possible* reading of PLCAA under which plaintiffs prevail – and the reasonable reading of PLCAA is that we do – federalism and comity require the Court to remand.

## II. THE REMOVING DEFENDANTS CANNOT ESTABLISH THAT PLCAA BARS PLAINTIFFS' NEGLIGENT ENTRUSTMENT CLAIMS.

The Bushmaster Defendants have never been able to articulate why the definition of negligent entrustment in PLCAA precludes a claim where the person to whom the firearm was entrusted did not personally cause the harm. Their latest brief is no exception.

In their first round of briefing, defendants relied on the text of PLCAA to argue that there is only one plausible interpretation of the word "use" in the negligent entrustment provision – namely, to discharge or threaten to discharge. As set forth in plaintiffs' Supplemental Motion to Remand, that interpretation is undermined by three canons of statutory interpretation: the plain meaning of "use" (which is not, according to any dictionary, synonymous with "discharge"); the statutory context (most notably Congress' use of "discharge" and "unlawful misuse" elsewhere in PLCAA); and the "old soil" attached to the word "use" from the Restatement section on negligent entrustment (which Congress borrowed in drafting PLCAA and which has long been held to encompass a foreseeable, successive entrustment).

### A. Defendants' Speculation as to Congressional Intent is Unavailing.

In their Supplemental Motion to Remand, plaintiffs contended that defendants' construction of "use" to mean "discharge" required an answer to at least two questions: Why would Congress have said "use" to mean "discharge" when Congress *did* say "discharge" in describing another protected cause of action? *See* Dkt. No. 47-1 at 18. And why would Congress have said, "use in a manner involving an unreasonable risk of physical injury," if what they meant was the far narrower, "use to *cause* injury?" *See id.* at 16. Defendants' brief does not even attempt to respond to either question.

4

Instead, defendants pivot to argue that "discharge" must be what Congress *intended*, even if it did not say so. *See* Def. Br. at 19 ("[I]n light of the PLCAA's purpose to limit claims against firearm sellers, a firearm 'use' should be interpreted to mean discharge or a threat of discharge."); *see also id.* at 20-21.[5] The evidence of this intent, according to defendants, is the parade of horribles that would result if plaintiffs' claim is allowed to proceed. *See* Def. Br. at 18 (arguing that if plaintiffs can proceed, the "lawful sale of any firearm, which later changes hands and is used in crime, could be alleged to have been negligently entrusted"); *id.* ("Permitting negligent entrustment actions arising from the criminal use of a firearm by persons who are once, twice or three times removed from the seller's initial sale would destroy … PLCAA.").

As an initial matter, plaintiffs' claims are not nearly as broad as defendants suggest. It is confined to a particular type of weapon and a particular population of users; it alleges notice to Riverview of the specific risks associated with selling that particular type of weapon to that particular population of users; and – like any claim arising in negligence – it is dependent on a finding of proximate cause, which "implicitly includes a limitation on the defendant's liability to foreseeable bounds." *Cammarota v. Guerrera*, 148 Conn. App. 743, 755 (2014).[6]

---

[5] There is an obvious problem with this argument: defendants seek to use PLCAA's clear purpose to preempt some claims as proof that the scope of an *explicitly preserved* claim – negligent entrustment – should also be read in favor of preemption. The essence of this argument is that, because PLCAA abrogates certain claims, *every* dispute as to the meaning of PLCAA must be resolved in favor of preemption. On the contrary, "[s]tatutes which invade the common law ... are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident." *Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 127 (2d Cir. 2001).

[6] This is also why defendants are incorrect when they assert that plaintiffs' allegations amount to a "strict liability claim." Def. Br. at 12. Plaintiffs make no allegation that the XM15-E2S was defective – indeed, it functioned precisely as intended (that is, as a mass casualty weapon). Moreover, plaintiffs do not assert that Riverview should be liable simply because the XM15-E2S is an unreasonably dangerous product to sell – indeed, it is an ideally dangerous product for a large consumer base (that is, military and law enforcement personnel). "[T]he essence of the tort" of negligent entrustment, by comparison, implicates "circumstances where an entrustor

5

Indeed, defendants' argument amounts to little more than a lament that the implications of plaintiffs' claims are distasteful to them and that, since PLCAA was enacted to afford protections to the gun industry, the Court should assume Congress would not endorse such a claim.  This is not a recognized canon of statutory interpretation.  *See Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81, 109 (2007) (Scalia, J., dissenting) ("[W]e never see fit to pronounce upon what we think Congress *meant* a statute to say, and what we think sound policy would *counsel* it to say, before considering what it *does* say."); *Union Bank v. Wolas*, 502 U.S. 151, 158 (1991) ("The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning.").

**B.  Defendants' Attack on the Relevance of Section 390 of the Restatement Fails.**

It is plain that PLCAA employs the word "use" in a manner that is nearly identical to Section 390 of the Restatement.  *Compare* 15 U.S.C. § 7903(5)(B) (entrustee likely to "use [the firearm] in a manner involving unreasonable risk of physical injury to the person or others"), *with* Restatement (Second) of Torts § 390 (entrustee likely to "use [the chattel] in a manner involving unreasonable risk of physical harm to himself and others").  And, just as the plain meaning of "use" in PLCAA is not "discharge," courts interpreting Section 390 have not interpreted "use" to mean "use to cause harm."  Rather, they have given the term its ordinary meaning, which includes foreseeable, successive entrustments. *E.g.*, *Rios v. Smith*, 95 N.Y.2d 647, 653 (2001) (finding evidence legally sufficient for the jury to have found defendant liable

---

should know that there is cause why a chattel ought not to be entrusted to another."  *Short v. Ross*, 2013 WL 1111820, at *7 (Conn. Super. Ct. Feb. 26, 2013).  Plaintiffs have amply alleged that such circumstances existed when Riverview sold the XM15-E2S to Nancy Lanza.  *See* Dkt. No. 47-1 at 26-28 (summarizing allegations within Connecticut's common law negligent entrustment framework).

for negligently entrusting ATVs to his son, "whose *use of the vehicles involved lending* one of the ATVs" to a friend who crashed and injured the plaintiff) (emphasis supplied).

Defendants argue that the congruence between Section 390 and PLCAA is "not complete" and that any inference of Congressional intent to borrow the common law meaning is "merely speculation." Def. Br. at 16. Yet they ignore the fact that courts interpreting PLCAA have not only recognized this similarity, but have relied upon it to guide their assessment of negligent entrustment claims. *See* Dkt. No. 47-1 at 21 fn.6 (citing cases where courts have explicitly noted the parallels between Section 390 and PLCAA).

In an effort to avoid the clear parallels between PLCAA and Section 390, defendants purport to identify a "distinction" between the two texts (unnoticed by the courts cited above) from which Congress' intent to bar plaintiffs' claim should be inferred. They argue that PLCAA narrowed the Restatement's definition of negligent entrustment by specifying that the person who uses the product in a manner involving unreasonable risk of physical injury to the person or others must be the same person to whom the defendant entrusts the product. *See* Def. Br. at 17. This is a straw man argument. There is no meaningful distinction, let alone one from which Congressional intent can be inferred. Both Section 390 and PLCAA revolve around the person to whom the chattel (or firearm) is supplied – the same person who then uses it in a manner involving an unreasonable risk of harm. Courts interpreting Section 390 have simply embraced an ordinary meaning of "use" that *includes* successive entrustments. Those decisions rightly inform the meaning of "use" in PLCAA's negligent entrustment definition.[7]

---

[7] Defendants conflate the question of *who* must use the firearm in a manner involving an unreasonable risk of physical harm with the question of what *types of uses* are encompassed by PLCAA. Only the latter question is disputed. Plaintiffs have never claimed that a defendant is liable for negligent entrustment if *anyone* uses the firearm in an unreasonably risky manner.

### C. Defendants' Suggestion that PLCAA's Negligent Entrustment Provision Does Not Apply to Lawful Sales is Wrong.

Throughout their brief, defendants emphasize that Riverview's sale of the XM15-E2S to Nancy Lanza was lawful.  *See* Def. Br. at 11-14; *e.g. id.* at 12 ("The Bushmaster XM-15 semi-automatic rifle was lawfully manufactured, sold and possessed in Connecticut in 2010, when Nancy Lanza made her purchase from Riverview Sales.").  In doing so, they imply that a firearm seller can only be liable for negligent entrustment when the sale is unlawful.[8]  Indeed, they go so far as to say that finding Riverview negligent for a sale that complied with all relevant state and federal regulations would "circumvent[] the intent of the legislature."  Def. Br. at 14.

Although the legality of an entrustment may inform a fact finder's determination as to whether it was negligent, a legal sale is not necessarily a reasonable one.  "There is all of the difference in the world between making something illegal and making it tortious.  Making an activity tortious forces the people who derive benefit from it to internalize the costs associated with it, thereby making sure that the activity will only be undertaken if it is desired by enough people to cover its costs.  It does not proscribe it altogether."  *McCarthy v. Olin Corp.*, 119 F.3d 148, 163 (2d Cir. 1997) (Calabresi, J., dissenting); *see also Kalina v. Kmart Corp.*, 1993 WL 307630, at *3, 5 (Conn. Super. Ct. Aug. 5, 1993) (rejecting Kmart's argument that judgment should enter on plaintiff's negligent entrustment of a firearm claim because Kmart's "only obligation was to require the purchaser to provide appropriate identification and to complete a Firearms Transaction Record Form, ATF Form 4473, pursuant to federal regulation"); *Short v.*

---

Rather, plaintiffs agree with defendants that it is the person to whom the defendant entrusts a product who must use it in an unreasonably risky way.

[8] The cases they cite as proper examples of negligent entrustment claims involve patently illegal firearm sales.  *See* Def. Br. at 11 fn.6 (discussing *Shirley v. Glass*, 297 Kan. 888, 890 (2013), where the actual buyer informed the seller that he had a felony conviction, and *Woods v. Steadman's Hardware, Inc.*, 2013 WL 709110, at *1 (D. Mont. Feb. 26, 2013), where the buyer informed the seller that he had been involuntarily committed six weeks earlier).

*Ross*, 2013 WL 1111820 (Conn. Super. Ct. Feb. 26, 2013) (denying motion to dismiss negligent entrustment claim against U-Haul even though U-Haul met all of its legal obligations).

Moreover, a reading of PLCAA as a whole demonstrates that Congress envisioned negligent entrustment as a claim arising from *legal* firearm sales. The exception immediately following the negligent entrustment exception provides for "an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product[.]" 15 U.S.C. § 7903(5)(A)(iii). In other words, there is an entirely separate provision under PLCAA for causes of action arising from the illegal sale of a firearm. Interpreting the negligent entrustment provision to apply only to illegal sales would render it superfluous. This cannot have been Congress' intent. *See United States v. Kozeny*, 541 F.3d 166, 174 (2d Cir. 2008) ("When interpreting a statute, we are required to give effect, if possible, to every clause and word of a statute, and to avoid statutory interpretations that render provisions superfluous.") (internal quotation marks and citation omitted).

### III. THE REMOVING DEFENDANTS CANNOT ESTABLISH THAT PLCAA BARS PLAINTIFFS' CUTPA CLAIMS.

CUTPA will serve as a predicate statute. The Bushmaster Defendants assert that the Second Circuit's decision in *City of New York*, 524 F.3d at 399-404, directs otherwise. Def. Br. at 24-33. They disagree with its holding, asserting that the Court's conclusions are dicta. *Id.* at 24, 31. It is understandable that they resist that holding: *City of New York* indicates that CUTPA is an appropriate predicate, because CUTPA clearly applies to and implicates the sale and marketing of firearms in Connecticut. *City of New York*, 524 F.3d at 404 (predicate exception "encompass[es]" both statutes applied to sale and marketing of firearms and statutes that "clearly . . . implicate the purchase and sale of firearms"). CUTPA admittedly does not "expressly regulate" firearms, but *City of New York explicitly holds that it need not*. *Id.* at 404.

9

The balance of defendants' CUTPA argument devolves into a scattershot attack. Def. Br. at 33-34.[9] First, they assert plaintiffs lack standing because they lack a commercial relationship with Riverview. Def. Br. at 33. CUTPA gives a right to sue to "*[a]ny person* who suffers *any ascertainable loss* as a result of the use or employment of a method, act or practice prohibited by [§] 42-110b[.]" Conn. Gen. Stat. § 42-110g. The scope of CUTPA standing is an open question under Connecticut law. *See Ganim v. Smith & Wesson Corp.*, 358 Conn. 313, 372-73 (2001) (noting that Connecticut's attorney general had argued the statutory language of § 42-110g determines who may bring CUTPA claim, disfavoring that argument, but deciding case on basis of "remoteness" rather than resolving whether CUTPA is confined to consumer plaintiffs); 12 *Conn. Prac. Series*, Langer *et al.*, *Unfair Trade Practices* § 3.6 at n.39 (on line ed. 2014) (observing that Connecticut Supreme Court's holding in *Ganim* "suggest[s] that the breadth of the class of potential CUTPA plaintiffs is still an open question").

Second, they assert that CUTPA permits recovery for financial damages only, not for damages flowing from personal injury or death. On the contrary, while Connecticut trial courts are divided on this issue, "[a] majority of trial courts addressing the issue have . . . held that damages for personal injuries can be recovered under CUTPA." 12 *Conn. Prac. Series* § 6.7 at n.19 (collecting cases). Lastly, they claim the CUTPA claims against Riverview are time-barred. They are not. Although the claims are asserted under CUTPA, they are governed for limitations purposes by the wrongful death statute. *See Pellechia v. Connecticut Light & Power Co.*, 52 Conn. Supp. 435 (2011) (holding that CUTPA claims seeking damages for wrongful death were governed by § 52-555), *aff'd* 139 Conn. App. 88 (2012), *cert. denied*, 307 Conn. 950 (2013).

---

[9] Defendants' *ad hoc* attacks on these claims are not properly before the Court, as they were not alleged as a basis for the claim of fraudulent joinder.

THE PLAINTIFFS,


By     */s/* Joshua D. Koskoff
Joshua D. Koskoff (ct15619)
Alinor C. Sterling (ct17207)
KOSKOFF, KOSKOFF & BIEDER
350 Fairfield Ave.
Bridgeport, CT  06604
Tel:  (203) 336-4421


**CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2015, a copy of the foregoing Reply brief was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.


    */s/* Joshua D. Koskoff
Joshua D. Koskoff (ct15619)