```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

DONNA L. SOTO, ET AL.,          :
                                :
    Plaintiffs,                 :
                                :
v.                              :    Case No. 3:15-cv-68 (RNC)
                                :
BUSHMASTER FIREARMS             :
INTERNATIONAL, LLC., ET AL.,    :
                                :
    Defendants.                 :

## MEMORANDUM

This is an action for damages and injunctive relief arising from the mass shooting at Sandy Hook Elementary School in Newtown, Connecticut, in which twenty children and six adults were killed by a shooter using a Bushmaster AR-15 rifle.  The case is brought by or on behalf of victims of the shooting.  The defendants are a number of entities and one individual involved in the manufacture, distribution and sale of the rifle.  The case was filed in Connecticut Superior Court initially.  In response to the state court complaint, two of the defendants removed the case to this Court invoking federal jurisdiction on the basis of diversity of citizenship.[1]  The issue addressed in this memorandum is whether the case must be remanded to state court because federal jurisdiction is lacking.  For reasons that follow, I conclude that remand is required.

---

[1] The other defendants consented to removal.  See Removal Consents (ECF Nos. 1-2, 1-3).

Defendants contend that this Court has jurisdiction based on the diversity of citizenship statute, 28 U.S.C. § 1332(a)(1), which confers on district courts "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states."  For diversity jurisdiction to exist, there must be complete diversity between the plaintiffs and the defendants, in other words, no plaintiff can be a citizen of the same state as any of the defendants.  See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005).  In this case, all the plaintiffs are citizens of Connecticut;[2] and one of the defendants, Riverview Sales, Inc. ("Riverview"), is also a Connecticut citizen.[3]  Defendants claim that the presence of Riverview may be disregarded for purposes of diversity jurisdiction because Riverview has been fraudulently joined as a defendant.[4]

---

[2] The Soto, Hockley, Sherlach, Pozner, Rousseau, Wheeler, Lewis, Barden and D'Avino plaintiffs are estates created under Connecticut probate law.  The remaining individual plaintiff - Natalie Hammond - is a citizen of Connecticut.  See Notice of Removal (ECF No. 1) ¶ 11.

[3] The manufacturer defendants (Remington Outdoor Company Inc. and Remington Arms Company, LLC) are citizens of Delaware and North Carolina.  The distributor defendants (Camfour, Inc. and Camfour Holding, Inc.) are citizens of Massachusetts.  Of the remaining defendants, David LaGuercia and Riverview Sales, Inc., Mr. LaGuercia is a citizen of Massachusetts, and Riverview is a citizen of Connecticut.

[4] When removal of a case from state to federal court is based on federal diversity jurisdiction, the complete diversity

Plaintiffs have moved to remand the case on the ground that defendants cannot sustain their heavy burden of establishing fraudulent joinder.  The defendants do bear the burden of establishing that federal jurisdiction exists, and the burden is a heavy one.  See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 302 (2d Cir. 2004).  To establish fraudulent joinder, the defendants "must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that [the] plaintiff[s] can state a cause of action against the non-diverse defendant in state court."  Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 460-61 (2d Cir. 1998).  Any doubts must be resolved in favor of remand.  See Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 213 (2d Cir. 2013).

Defendants do not claim that plaintiffs have engaged in outright fraud by joining a non-diverse defendant having no real connection to the case.  Indeed, Riverview is alleged to have sold the rifle used in the shooting.  They claim, rather, that there is no legal basis for plaintiffs' claims against Riverview because the Protection of Lawful Commerce in Arms Act ("PLCAA"),

---

requirement applies just as it would if the case were filed in federal court originally.  In addition, under the federal statute governing removal, a diversity case is not removable "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b).

15 U.S.C. §§ 7901, et seq., provides Riverview with immunity from this suit. The record establishes that the immunity provided by this statute will also be asserted with regard to the claims against the other defendants.[5]

The "no possibility" standard used to assess claims of fraudulent joinder aims to identify cases in which it is objectively reasonable for the court to conclude that the plaintiff has improperly sued a non-diverse defendant in order to deprive the other defendants of their right to a federal forum under the removal statute. Said differently, fraudulent joinder exists when it is objectively reasonable to infer that the plaintiff has engaged in a form of litigation abuse. See 14B Wright, Miller & Cooper, Federal Practice & Procedure § 3723 (4th ed.) (noting that fraudulent joinder doctrine tries to avoid "reward[ing] abusive pleading by plaintiffs"). If there is no possibility a plaintiff can state a cause of action against a non-diverse defendant, then it is objectively reasonable to infer that the plaintiff is guilty of a form of cheating, and remand is

---

[5] Plaintiffs contend that the removing defendants should not be permitted to assert fraudulent joinder on the basis of a defense that applies to all the defendants. Plaintiffs invoke the common defense rule derived from Chesapeake & Ohio Ry. Co. v Cockrell, 232 U.S. 146 (1914). The rule has not been adopted by the Second Circuit but plaintiffs urge it should be followed here. Under this rule, removal is impermissible when the claim of fraudulent joinder rests on a common defense that equally disposes of the claims against all the defendants, diverse and non-diverse alike. See Smallwood v. Illinois Central RR Co., 385 F.3d 568 (5th Cir. 2004) (en banc); Boyer v. Snap-On Tools Corp., 913 F.2d 108 (3d Cir. 1990).

an appropriate response to the plaintiff's improper conduct.  But if the plaintiff's claim is not precluded as a matter of law - if there is any possibility the plaintiff can state a claim against the non-diverse defendant - an inference that the plaintiff is guilty of improper conduct is unwarranted, and adjudicating the case in federal court would violate the plaintiff's right to choose the forum for the litigation.

Viewed in light of this purpose, the "no possibility" standard for fraudulent joinder is similar to the Rule 11 standard for identifying instances of litigation abuse for which sanctions should be imposed.  Rule 11 seeks to deter frivolous litigation without chilling creative advocacy.  See Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.  Thus, the Rule provides that arguments for extensions, modifications, or reversals of existing law or for creation of new law are not sanctionable, provided they are not frivolous.  See id.  In deciding whether a claim exceeds the limits of permissible partisan advocacy, courts apply a standard of objective reasonableness.  See ATSI Communications, Inc. v. Shaar Fund, Ltd., 579 F.3d 143, 150 (2d Cir. 2009).  Because an "objectively unreasonable" standard may have an inhibiting effect on vigorous advocacy, to the detriment of the effective functioning of the adversarial system, a safe harbor provision gives lawyers an opportunity to withdraw a submission challenged by an adversary.

See In re Pennie & Edmonds LLP, 323 F.3d 86, 91 (2d Cir. 2003).

The analysis under both Rule 11 and fraudulent joinder therefore turns not on how likely a claim is to succeed, but rather on whether the claim is objectively frivolous.  See Davis v. Prentiss Properties Ltd., Inc., 66 F. Supp. 2d 1112, 1115 (C.D. Cal. 1999) (concluding, based on Rule 11 standard, that "if a diversity-defeating claim is not frivolous, the plaintiff has the right to have it considered by the state court in which it was filed").  Applying the "no possibility" standard with the restraint characteristic of sanctions determinations ensures that litigants do not withhold claims that could be brought in good faith and in furtherance of the public interest in order to avoid the risk of removal.

Accordingly, it is necessary to determine whether there is any possibility the plaintiffs in this case can state a claim against Riverview.  See Kenneson v. Johnson & Johnson, No. 3:14-cv-01184(MPS), 2015 WL 1867768, at *6 (D. Conn. Apr. 23, 2015) (holding that party was not fraudulently joined because claim "appear[ed] to be possible under Connecticut law" and "ha[d] not been foreclosed by controlling authority"); see also Retirement Prog. for Employees of the Town of Fairfield v. NEPC, LLC, 642 F. Supp. 2d 92, 97 (D. Conn. 2009)(holding that party was not fraudulently joined because "[t]he applicability of [the misrepresentation rules in § 522 of the Restatement (Second) of

6

Torts] in Connecticut is not clear."). More specifically, the question is whether the plaintiff's claims against Riverview are plainly foreclosed by the PLCAA, as the defendants contend, or are legally possible, as the plaintiffs argue.[6]

The PLCAA, enacted by Congress in 2005, provides immunity to firearms manufacturers and dealers from any "qualified civil liability action." 15 U.S.C. § 7902(b).[7] The PLCAA provides six exceptions when suit is permitted.[8] Plaintiffs' complaint

---

[6] At various points in their papers, defendants contend that they can establish fraudulent joinder because there is no "reasonable basis" for the claims against Riverview. See Notice of Removal (ECF No. 1), at 5. While courts in this Circuit have applied varying formulations of the standard for fraudulent joinder, see Oliva v. Bristol-Myers Squibb Co., No. 3:05CV00486(JCH), 2005 WL 3455121 (D. Conn. Dec. 16, 2005), analysis of the cases shows that, in substance, the courts are applying the "no possibility" standard set forth in Pampillonia, see 138 F.3d at 461, which is the standard applied here.

[7] The statute defines a qualified civil liability action as: "[A] civil action or proceeding . . . brought by any person against a manufacturer or seller of a [firearm distributed in interstate or foreign commerce] . . . for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a [firearm distributed in interstate or foreign commerce] by the person or a third party." 15 U.S.C. § 7903(5)(A).

[8] The six statutory exceptions are:

(i) an action brought against a transferor convicted under section 924 (h) of title 18, or a comparable or identical State felony law, by a party directly harmed by the conduct of which the transferee is so convicted;

(ii) an action brought against a seller for negligent entrustment or negligence per se;

(iii) an action in which a manufacturer or seller of a

7

against Riverview seeks to assert claims within the scope of the exceptions for claims alleging negligent entrustment, 15 U.S.C. § 7903(5)(A)(ii), and claims alleging a knowing violation of a state statute governing the sale and marketing of firearms, 15

---

> qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, including—
>
>> (I) any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or
>>
>> (II) any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of title 18;
>
> (iv) an action for breach of contract or warranty in connection with the purchase of the product;
>
> (v) an action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, except that where the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage; or
>
> (vi) an action or proceeding commenced by the Attorney General to enforce the provisions of chapter 44 of title 18 or chapter 53 of title 26.  15 U.S.C. § 7903(5)(A).

U.S.C. § 7903(5)(A)(iii), commonly referred to as the "predicate exception."

In contending that the plaintiffs' claims against Riverview are clearly baseless in light of the immunity provided by the PLCAA, defendants ask this Court to determine that the word "use" in the negligent entrustment exception means "discharge."  In addition, they ask this Court to determine that the Connecticut Unfair Trade Practices Act does not constitute a statute governing the sale and marketing of firearms for purposes of the predicate exception.  These are questions of first impression.[9]

---

[9] Cases concerning the PLCAA fall into three groups. First, there are cases that challenge its constitutionality.  All courts have held that the statute is valid under the Commerce Clause and the separation-of-powers doctrine.  See Ileto v. Glock Inc., 565 F.3d 1126 (9th Cir. 2009); City of New York v. Beretta U.S.A. Corp., 524 F.3d 384 (2d Cir. 2008); Estate of Charlot v. Bushmaster Firearms, Inc., 628 F. Supp. 2d 174 (D.D.C. 2009); Estate of Kim v. Coxe, 295 P.3d 380 (Alaska 2013); Gilland v. Sportsmen's Outpost, Inc., No. X04CV095032765S, 2011 WL 2479693 (Conn. Super. Ct. May 26, 2011); District of Columbia v. Beretta U.S.A. Corp., 940 A.2d 163 (D.C. 2008).  Second, there are cases concerning its preemptive effect, specifically with regard to claims under the D.C. Assault Weapons Manufacturing Strict Liability Act ("SLA").  All courts have held that the statute preempts SLA claims.  See Estate of Charlot, 628 F. Supp. 2d at 174; Beretta, 940 A.2d at 163.  Third, there are cases involving issues of statutory interpretation focusing mainly on the predicate exception.  See Ileto, 565 F.3d at 1126; Berretta, 524 F.3d at 384; Jefferies v. District of Columbia, 916 F. Supp. 2d 42 (D.D.C. 2013); Bannerman v. Mountain State Pawn, Inc., No. 3:10-CV-46, 2010 WL 9103469 (N.D. W. Va. Nov. 5, 2010); Sambrano v. Savage Arms, Inc., 338 P.3d 103 (N.M. Ct. App. 2014); Estate of Kim, 295 P.3d at 380; Williams v. Beemiller, Inc., 100 A.D.3d 143 (N.Y. App. Div. 2012); Gilland, 2011 WL 2479693, at *1; Smith

Plaintiffs have presented reasoned arguments supporting their position that the word "use" does not necessarily mean "discharge" and that CUTPA does fit within the scope of the predicate exception even though it does not expressly refer to firearms.  Defendants respond that if the plaintiffs' arguments were accepted, the immunity Congress intended to confer on firearms dealers would be illusory.  Whatever persuasive force might be accorded this argument on a motion to dismiss the complaint against Riverview for failure to state a claim on which relief can be granted, the question at this juncture is whether the plaintiffs have any possibility of stating a claim.  See Nemazee v. Premier, Inc., 232 F. Supp. 2d 172, 178 (S.D.N.Y. 2002) ("Any possibility of recovery, even if slim, militates against a finding of fraudulent joinder; only where there is 'no possibility' of recovery is such a finding warranted.").  That plaintiffs may face an uphill battle in litigating their claims does not resolve the question presented here: whether the claims are clearly precluded as a matter of law.  See Moorehouse v. Bayer Healthcare Pharm., Inc., No. 08-01831(SBA), 2008 WL 2477389, at *3 (N.D. Cal. June 18, 2011) ("Defendants contend that no California case has ever held a distributor liable for failure to warn in the prescription drug context.  However, even

---

& Wesson Corp. v. City of Gary, 875 N.E.2d 422 (Ind. Ct.  App. 2007).

if true, that fact alone does not suggest that it is obvious according to the settled rules of California that a failure to warn cause of action is not viable.").

After considering the parties' lengthy submissions, I am not convinced that the plaintiffs fraudulently joined Riverview in the state court action in an improper attempt to deprive the other defendants of their right to a federal forum. While the immunity provided by the PLCAA could result in dismissal of the claims against Riverview, neither the statute itself nor any controlling case conclusively establishes that the plaintiffs cannot state a cause of action against Riverview. Under the "no possibility" standard, therefore, defendants' submissions fall short of establishing that Riverview has been fraudulently joined.[10]

Defendants urge that they are entitled to have this Court interpret and apply the PLCAA. Under the well-pleaded complaint rule, however, a federal defense does not provide a basis for removal when complete diversity is lacking. See 13D Wright, Miller & Cooper, Federal Practice & Procedure § 3566 (3d ed.). Because fraudulent joinder has not been established, this Court does not have jurisdiction to delve into the merits of this dispute. Cf. Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380-

---

[10] Because defendants have failed to establish that there is no possibility the plaintiffs can state a cause of action against Riverview, I do not reach plaintiffs' argument based on the common defense rule.

11

81 (11th Cir. 1998) ("In a fraudulent joinder inquiry, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.").

In the motion to remand, plaintiffs request an award of costs and fees incurred as a result of the removal.  When a case is remanded, fees should be awarded only if the removing party did not have an objectively reasonable basis for removal.  <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132, 136 (2005).  Given the lack of controlling authority regarding removal based on PLCAA immunity, plaintiffs' request for costs and fees is denied.

Accordingly, the case will be remanded.

```
              /s/ RNC
        Robert N. Chatigny
      United States District Judge
```